**Murray D. STRINGER and Nellie Hearon Stringer, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 72–1803.**

United States Court of Appeals, Fifth Circuit.

Jan. 16, 1973.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., Kent Frizzell, Asst. Atty. Gen., Jacques B. Gelin, Glen R. Goodsell, Attys., Dept. of Justice, Washington, D. C., for defendant-appellant.

Pat H. Scanlon, Jackson, Miss., for plaintiffs-appellees.

Before RIVES, THORNBERRY and GOLDBERG, Circuit Judges.

THORNBERRY, Circuit Judge:

In this eminent domain case the United States appeals from the district court's judgment in favor of the private property owners. We must reverse and remand.

Since 1952, Mr. and Mrs. Stringer, appellees herein, have owned and resided on property located adjacent to the south side of the Natchez Trace Parkway, a national parkway administered and maintained by the Secretary of the Interior. 16 U.S.C.A. § 460. In addition to their homesite, the Stringers own a fifteen-foot wide appurtenant easement between their property and the Parkway, which provides ingress into and egress from the Parkway and is the principal means of access to their property. This easement is the object of controversy in this case. In 1965, the Superintendent of the Natchez Trace Parkway, without giving notice to the Stringers and without initiating condemnation proceedings or depositing in any court the estimated value of the easement,[1] erected concrete barriers

---

1. Under the Declaration of Taking Act, 40 U.S.C.A. § 258a, the United States may acquire title to property taken pursuant to its eminent domain power by filing a "declaration of taking" and depositing the amount of estimated compensation in the

across the easement right-of-way pursuant to statutory authority.[2] After attempting unsuccessfully to negotiate with various governmental agencies for compensation or for removal of the barricades, the Stringers in 1971, on advice of counsel, resorted to self-help. They physically removed the barriers and filed suit against the United States for a declaratory judgment affirming their ownership of the easement and for damages under the Tucker Act, 28 U.S.C.A. § 1346(a)(2), to compensate for their loss of the use of the easement for almost six years. The United States contested the Stringers' ownership of the easement and counterclaimed for damages for loss of the barricades and for an injunction against future interference with new barricades which would be erected at the same location. The district court declared the Stringers to be the owners of the easement and awarded them $3,000.00 in damages for the temporary loss of its use; the district court dismissed the Government's counterclaim.

On this appeal the Government no longer contests the Stringers' original ownership of the easement but argues that the erection of the barricades was a lawful and complete "taking" of the easement under the sovereign's power of eminent domain and that it is entitled to damages for the wrongful removal of the barriers. In the Government's view the Stringers are entitled to compensation for permanent loss of the easement under the Tucker Act but have no other remedy. The Stringers argue that the attempted taking of their easement without any prior notice, hearing, or compensation violated the Just Compensation and Due Process clauses of the

Fifth Amendment and that they had a right to remove the illegal barricades and are entitled to damages for the temporary loss of use of the easement.

The question on which issue is joined is whether the Government may exercise its eminent domain power consistently with the Fifth Amendment by physically seizing property without any prior notice, hearing, or compensation. The answer to this question is yes. It is well established that the property owner is not entitled to actual compensation before the Government takes possession of his land, but only to an adequate provision for compensation:

> It [the Constitution] does not provide or require that compensation shall be actually paid in advance of the occupancy of the land to be taken; but the owner is entitled to reasonable, certain, and adequate provision for obtaining compensation before his occupancy is disturbed. Whether a particular provision be sufficient to secure the compensation to which, under the constitution, he is entitled is sometimes a question of difficulty.

Cherokee Nation v. Southern Kansas Railway Company, 1890, 135 U.S. 641, 659, 10 S.Ct. 965, 971–972, 34 L.Ed. 295. Further, the Supreme Court has held that where property is seized pursuant to valid statutory authority, as in this case,[3] the Tucker Act provides the owner "a plain, adequate, and complete remedy at law." Hurley v. Kincaid, 1932, 285 U.S. 95, 105, 52 S.Ct. 267, 269, 76 L.Ed. 637. Thus, the Tucker Act constitutes the pre-seizure "adequate provision" for compensation which the Fifth Amendment requires. In United States v. Dow, 1958, 357 U.S. 17, 78 S.Ct. 1039, 2

---

federal court where the condemnation proceeding "has been or may be instituted" at any time before judgment in that court is rendered.

2. In Gardner v. Harris, 5th Cir. 1968, 391 F.2d 885, this Court held that the Superintendent, as an agent of the Secretary of the Interior, was acting within the au-

thority conferred by 16 U.S.C.A. § 460 when he blockaded the access easement of Dr. Harris, the Stringers' neighbor on the north side of the Parkway. Necessarily, the statute also authorized the blockading of the Stringers' easement. The constitutionality of the statute is not challenged.

3. See note 2, supra.

L.Ed.2d 1109, the Court restated the *Kincaid* holding with approval:

> Broadly speaking, the United States may take property pursuant to its power of eminent domain in one of two ways: It can enter into physical possession of property without authority of a court order; or it can institute condemnation proceedings under various Acts of Congress providing authority for such takings. Under the first method—physical seizure—no condemnation proceedings are instituted, and the property owner is provided a remedy under the Tucker Act, 28 U.S.C. §§ 1346(a) and 1491, 28 U.S.C.A. §§ 1346(a), 1491, to recover just compensation. See Hurley v. Kincaid, 285 U.S. 95, 104, 52 S.Ct. 267, 269, 76 L.Ed. 637.

357 U.S. at 21, 78 S.Ct. at 1044.

██ ██ When the Government opts for the physical seizure method, eschewing prior condemnation proceedings, the "taking" occurs at the moment of seizure, even though title does not pass until compensation is actually paid. United States v. Dow, *supra;* Albert Hanson Lumber Company v. United States, 1923, 261 U.S. 581, 587, 43 S.Ct. 442, 444, 67 L.Ed. 809. The difference between the time of taking and the time title passes should not be a source of confusion. The Government's possession is lawful[4] from its beginning, and "title" under these circumstances represents only the owner's claim for compensation under the Tucker Act.

██ ██ We agree with the view expressed by the Ninth Circuit that "to seize and say 'sue me' is high-handed government conduct, and not to be favored." United States v. Herrero, 9th Cir. 1969, 416 F.2d 945, 947, cert. denied 397 U.S. 973, 90 S.Ct. 1090, 25 L.Ed.2d 267. Nevertheless, in view of the authorities cited above, there is no escape from the conclusion that the Government did not violate the Fifth Amendment in blockading the Stringers' easement and that the latters' only remedy was and is a suit for damages under the Tucker Act.[5] On remand, the plaintiffs should be allowed to amend their pleadings to claim damages for the permanent taking of their easement. Further, since the Government's taking of the easement was lawful, it is entitled to damages for the wrongful removal of the barricades. We do not decide whether an injunction against future interference would be proper; the district court should consider this question in the first instance under general principles of equity which govern the issuance of an injunction in the federal courts. *See generally* 3 W. Barron & A. Holtzoff, Federal Practice and Procedure § 1431 (1958).

The judgment of the district court is reversed and the case is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded with directions.

4. Or at least, "the illegality . . . is confined to the failure to compensate . . . for the taking. . . ." Hurley v. Kincaid, 1932, 285 U.S. 95, 104, 52 S.Ct. 267, 269, 76 L.Ed. 637.

5. Under the Tucker Act, 28 U.S.C.A. §§ 1346, 1491, the district court has concurrent jurisdiction with the Court of Claims only for claims up to $10,000. If the claim alleged exceeds this amount, the Court of Claims has exclusive jurisdiction. If appellees' claim is repleaded in an amount over the $10,000 jurisdictional limit of the district court, the case may be transferred to the Court of Claims. 28 U.S.C.A. § 1406(c).