**In re James C. BIBLE, Jr., Debtor-in-Possession.**

**Ann W. BIBLE, Movant,**

**v.**

**James C. BIBLE, Jr., Respondent.**

**Bankruptcy No. 90–10048.**

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

Feb. 23, 1990.

John B. Long, Augusta, Ga., for movant.

James D. Walker, Jr., Augusta, Ga., for respondent.

## ORDER

JOHN S. DALIS, Bankruptcy Judge.

Before this court is the debtor-in-possession's (hereinafter "debtor") request that this court enjoin the debtor's spouse, Ann W. Bible, from proceeding with an action for separate support and maintenance, equitable division of property, attorney's fees, suit costs and contempt against the debtor which is pending in the Family Court for the Thirteenth Judicial Circuit in Greenville County, South Carolina. In addition, Mrs. Bible moved for relief from stay to allow the domestic actions to continue in South Carolina.

Hearing was held on February 9, 1990. After consideration of the pleadings, evidence presented and the arguments of counsel, this court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On October 26, 1988, debtor a resident of Richmond County, Georgia, filed an action for divorce in the Superior Court of Richmond County, Georgia (hereinafter "first Georgia action"). The complaint for divorce with summons was served on an employee of Mrs. Bible at Mrs. Bible's residence in Greenville County, South Carolina.

2. On October 27, 1988, Mrs. Bible filed an action for separate maintenance and support, and equitable distribution of marital property in the Family Court for the Thirteenth Judicial Circuit in Greenville County, South Carolina (hereinafter "South Carolina action"). The debtor was personally served with the complaint while temporarily present in South Carolina.

3. On November 18, 1988, a hearing was held before the Family Court in Greenville County, South Carolina for the purposes of determining temporary alimony. On November 21, 1988, the Honorable R. Kinard Johnson, Jr., Judge of the Family Court, entered an order awarding Mrs. Bible the sum of Twelve Thousand and No/100 ($12,000.00) Dollars per month in temporary alimony. An appeal was taken by the debtor to the South Carolina Supreme Court.

4. On December 22, 1988, the Richmond County Superior Court ruled that the service of process on Mrs. Bible's employee constituted valid service on Mrs. Bible and that it had jurisdiction to hear the divorce. Mrs. Bible appealed the order to the Georgia Supreme Court.

5. On February 21, 1989, the Supreme Court of South Carolina granted to the debtor a supersedeas as to the order awarding temporary alimony.

6. On September 6, 1989, the Georgia Supreme Court held that the service on Mrs. Bible's employee was improper and dismissed the first Georgia action. *Bible v. Bible*, 259 Ga. 418, 383 S.E.2d 108 (1989).

7. On October 4, 1989, the debtor refiled for divorce in the Superior Court of

Richmond County, Georgia (hereinafter "second Georgia action").

8. On November 22, 1989, the debtor's counsel in the second Georgia action requested that the case be placed on the next calendar for jury trials of divorce actions which was scheduled for February 26, 1990.

9. On December 15, 1989, the South Carolina Supreme Court affirmed the order for temporary alimony and set aside the supersedeas.

10. On or about December 20, 1989, the parties were notified that the South Carolina action would be set for trial on January 15, 1990 before the Honorable Joseph D. Board, Judge of the Family Court. Under the South Carolina Family Court system of rotating judges different judges may hear various aspects of a case. The debtor was also admitted to a hospital in Augusta, Georgia on or about December 20 with an advanced lung disease.

11. On January 2, 1990, Mrs. Bible, by and through her counsel, filed a motion in the South Carolina case seeking to have the debtor held in contempt of court because he failed to pay the temporary alimony awarded by the Family Court. The contempt action was scheduled to be heard at the time of the trial of the underlying action, January 15, 1990.

12. On January 4, 1990, Richmond County Superior Court Judge, the Honorable John H. Ruffin, Jr., dismissed the second Georgia action on the grounds that the court lacked jurisdiction over Mrs. Bible. Debtor's counsel in the second Georgia action has requested reconsideration of the dismissal, but at this time Judge Ruffin has not ruled on that request.

13. On January 10, 1990, the debtor filed for protection in this court under Chapter 11 of Title 11, United States Code.

14. On January 12, 1990, the debtor requested that this court enter a temporary restraining order (TRO) to prevent Mrs. Bible from proceeding with the South Carolina action for separate support and maintenance, equitable division of property, attorneys fees, suit costs and contempt. Hearing was held on that date whereupon Mrs. Bible appeared through counsel and opposed the issuance of a TRO and sought relief from stay. At the conclusion of that hearing, this court entered a TRO restraining Mrs. Bible, her agents and attorneys from prosecuting the South Carolina action.

15. After notice to all parties, this court held a hearing on the request for a preliminary injunction on January 17, 1990, and entered an order enjoining Mrs. Bible, her agents, and attorneys from proceeding with the South Carolina action until this court could consider and rule on her motion for relief from stay and the need for a permanent injunction.

16. The debtor was released from the hospital in late January, 1990. Subsequent to the hearing of February 9, 1990, the debtor has been hospitalized, again, with pneumonia and other lung complications. The debtor is receiving continuous oxygen therapy, and requires continuous medical supervision.

17. Mrs. Bible has a net worth of approximately Two Million ($2,000,000.00) Dollars, and the debtor has a net worth of approximately Seven Million ($7,000,000.00) Dollars. Debtor's schedule B-2 filed in this case listing his personal property shows more than Two Hundred Thousand and No/100 ($200,000.00) Dollars cash on deposit with banking institutions.

## CONCLUSIONS OF LAW

In the preliminary injunction order of January 18, 1990, this court found that the action pending in Greenville County, South Carolina was an action to recover money or property from the debtor. The action brought by Mrs. Bible seeks an equitable distribution of the marital property and support or maintenance. The parties have stipulated that all proceedings in the South Carolina action other than the contempt proceedings are covered under the stay provisions of 11 U.S.C. § 362(a).[1] As to the

---

1. 11 U.S.C. § 362(a) provides:

(a) Except as provided in subsection (b) of

contempt action, Mrs. Bible argues alternatively that the stay of § 362(a) is inapplicable because pursuant to § 362(b)(1) the filing of a bankruptcy petition does not operate as a stay of the "commencement or continuation of a criminal action or proceeding against the debtor" or pursuant to § 362(b)(2), the stay does not prevent "the collection of alimony, maintenance or support from property that is not property of the estate." Pertaining to the § 362(b)(1) exception, applicability of this code section turns on the civil or criminal nature of the contempt proceeding now pending in the South Carolina action. "Civil contempts are those quasi contempts which consist in failing to do something which the contemnor is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court while criminal contempts are all those acts in disrespect of the court or of its process or which obstruct the administration of justice, or tend to bring the court into disrespect, such as disorderly conduct, insulting behavior in the presence or immediate vicinity of the court, or acts of violence which interrupt its proceedings; also disobedience or resistance of the process of the court, interference with property in the custody of the law, misconduct of officers of the court...." *Clamp v. Hall,* 287 S.C. 270, 335 S.E.2d 815 (Ct.App.1985) [quoting *State v. Nathans,* 49 S.C. 199, 207, 27 S.E.

52, 55 (1896)]. "Sanctions for contempt, of course, may entail imprisonment; however, imprisonment for contempt can be remedial as well as punitive (citation omitted). If the punishment is remedial and for the benefit of the complainant, the contempt is civil contempt. *Clamp, supra* [citing *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911)]. "[I]mprisonment for contempt is civil where the imprisonment is 'clearly intended to operate in a prospective manner—to coerce, rather than punish.'" *Clamp, supra* [quoting *Shillitani v. U.S.,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622, 627 (1966)].

■ Any sanction against the debtor for failing to pay the temporary alimony awarded Mrs. Bible including imprisonment, would be to coerce the debtor to make the payments, not punish him for his failure to do so. Mrs. Bible's South Carolina counsel testified at the preliminary injunction hearing that the contempt action was filed to obtain money or property from the debtor and would be dismissed if the debtor paid Mrs. Bible.[2] The contempt action is civil in nature and does not fall within the exception for criminal proceedings provided by § 362(b)(1). The civil contempt action is stayed by § 362(a) upon the

this section, a petition filed under section 301, 302, or 303 of this title or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

**2.** The parties stipulated that all evidence presented at the TRO and preliminary injunction hearings may be considered by the court in this hearing for permanent injunction and relief from stay. *See,* Bankruptcy Rule 7065 [Fed.R. Civ.P. 65(a)(2)]

filing of debtor's petition for relief under Chapter 11 of Title 11, United States Code.

■ Pertaining to the § 362(b)(2) exception, in the TRO of January 12, 1990, this court found that the contempt action was "not an attempt to collect alimony from *property* that is not property of the estate" (emphasis in original order), but is an action brought against the debtor to compel him to pay accrued temporary alimony. The civil action is brought against the debtor to force the debtor, under the possible sanction of imprisonment, to pay prepetition accrued temporary alimony. *See*, 11 U.S.C. § 362(a)(1). The action is not an action to collect from property. The focus of the contempt action is on the debtor, not property. The civil contempt action against the debtor to recover prepetition accrued temporary alimony is an action commenced against the debtor to recover a claim against the debtor pending at the time of the commencement of this Chapter 11 proceeding and is, therefore, stayed under § 362(a).

■ The question remaining to be resolved is whether Mrs. Bible is entitled to relief from stay to allow the actions to proceed in state court. The actions for contempt and for equitable distribution of marital property and separate maintenance and support, though pending in the same case, seek very different results; and therefore, stay relief must be considered separately. "[A]s a court of equity the bankruptcy court will be required to consider the impact of the stay on the parties and to consider the 'balance of hurt' in fashioning relief. The method of adequate protection may vary." 2 *Collier on Bankruptcy* ¶ 362.07 (L. King 15th ed., 1989). The pending contempt action against the debtor involves unpaid temporary alimony payments which accrued prior to the time that the debtor filed his petition in bankruptcy, and a prayer that the debtor be required to pay future payments under Family Court supervision. The accrued alimony at the time of the filing constitutes a right to payment, a claim against the estate. 11 U.S.C. § 101(4)(A). As it pertains to prepetition payments, Mrs. Bible is a creditor

holding a claim. The Bankruptcy Code under Chapter 11 provides a debtor an opportunity to put forth a plan to deal with his creditors in an orderly manner and provides the debtor a 120–day period when he alone may file such plan. 11 U.S.C. § 1121. "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6296–97. "The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally." S.Rep. No. 989, 95th Cong., 2nd Sess. 49 (1978), U.S.Code Cong. & Admin.News 1978, p. 5835. The contempt action seeks to compel the debtor to pay under penalty of sanctions, including imprisonment, temporary alimony due prior to the bankruptcy filing. If the debtor were imprisoned for his failure to pay this prepetition debt his ability as the debtor-in-possession to administer the estate would be greatly diminished. Such an interference in a debtor-in-possession's ability to administer the bankruptcy estate would work to the detriment of all creditors and could cause substantial losses to the estate. To avoid imprisonment, the debtor could be forced to pay this prepetition claim from assets of the estate, also, to the detriment of other creditors. To allow the contempt action to continue to force payment of this prefiling debt from property of the estate would be in direct contravention of the language and legislative history of § 362 in particular and the Bankruptcy Code, generally. There exists no basis in law or equity

for the granting of relief from stay in this regard.

■ Proceedings or actions to collect temporary alimony payments due after the debtor filed for protection under Chapter 11 of the Bankruptcy Code would not be stayed by § 362(a) to the extent that the collection of the temporary alimony is from property that is not property of the estate. 11 U.S.C. § 362(b)(2). A Chapter 11 proceeding creates an estate as does a filing under any other chapter of the Bankruptcy Code. 11 U.S.C. § 541. The debtor's estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). "Property acquired by the debtor subsequent to the filing of a petition in bankruptcy does not become part of the bankruptcy estate unless inclusion is specifically required by statute (citations omitted)." *In re: Dvoroznak*, 38 B.R. 178, 181 (Bankr.E.D.N.Y.1984). Proceeds, product, offspring, rents, and or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case, becomes property of the bankruptcy estate. 11 U.S.C. § 541(a)(6).[3] Therefore, the debtor's chapter 11 estate would include all proceeds, product, offspring, rents, and or profits of or from all property in which the debtor had an interest at the time of the commencement of the case under Title 11, but would not include any salary he received for his services or after acquired property unless specifically included by statute.

"Since [Mrs. Bible] may proceed against after acquired assets of the debtor for payments of alimony due following the filing of the petition, it is only fitting that the claim which is the predicate for such unmatured payments not be permitted to share in a distribution of the debtor's estate." 3 *Collier on Bankruptcy* ¶ 502.02(6) (L. King 15th ed. 1989). Therefore, Mrs. Bible would not be a creditor within the meaning of the Bankruptcy Code as to postpetition

temporary alimony payments, and the automatic stay of 11 U.S.C. § 362(a) would not apply to Mrs. Bible pursuing the collection of the alimony payments due since the debtor's bankruptcy filing from any property which is not property of the estate. Additionally, § 362(a)(1) does not apply to stay the commencement of a judicial proceeding against the debtor to collect unpaid alimony which accrued since the bankruptcy filing. Since the alimony was not due prepetition, an action for these payments could not have been brought before the commencement of this case, nor could a claim have arisen before the filing of the bankruptcy petition.

The motion for relief from stay will be denied as to the contempt action designed to coerce the debtor to pay Mrs. Bible temporary alimony which accrued prior to the commencement of the debtor's bankruptcy case, but the debtor remains obligated to pay Mrs. Bible Twelve Thousand and No/100 ($12,000.00) Dollars per month as required by the Family Court of South Carolina for each month since he filed for protection under the Bankruptcy Code. The main prerequisite to obtaining injunctive relief is a finding that the debtor is being threatened by some injury to which he has no adequate legal remedy. 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2942 (1973). Having determined that the § 362(a) stay applies to prevent any action against the debtor to collect the accrued prebankruptcy petition alimony payments, 11 U.S.C. § 362(h) provides an adequate remedy at law to redress any injury suffered by the debtor as a result of a stay violation. Injunctive relief, therefore, would not be appropriate.

■ Having determined that the § 362(a) stay does not apply to actions commenced against the debtor or against property that is not property of the estate to collect alimony payments which have accrued since the bankruptcy filing, the appropriateness of injunctive relief must be considered. The issuance of an injunction

---

**3.** Other instances of when after-acquired property may be property of the debtor's estate are set forth in § 541(a)(5) and (a)(7).

is governed by general principles of equity and rests in the discretion of the court. *Stringer v. U.S.,* 471 F.2d 381 (5th Cir., 1973); Wright & Miller, *Federal Practice and Procedure, supra.* For this court to exercise this equitable discretion and issue an injunction the debtor must demonstrate that there is a real danger that the act complained of actually will take place. There must be more than a mere possibility or fear that the injury will occur. Wright & Miller, *Federal Practice and Procedure, supra.* In the present case there exists no present danger of imprisonment unless the debtor willfully fails to meet the post filing payments due for February, 1990 forward. *Woodside v. Woodside,* 290 S.C. 366, 350 S.E.2d 407 (1986) (a party is in contempt of court when he willfully disobeys a court order). As long as the postpetition payments are met, no threat exists. If the debtor fails to meet his obligation, imprisonment for willful failure to meet the alimony payment is a possibility, and that imprisonment would seriously impact upon the debtor's ability to fulfill his responsibilities as a debtor-in-possession. However, unlike the situation of imprisonment for failure to pay a prepetition debt, this potential disruption of his ability to perform the duties of a debtor-in-possession would be as a result of his unwillingness to meet a postpetition obligation. Even if such failure were determined by the Family Court not to be willful, and the debtor avoided a contempt determination, the inability of the debtor to meet his ongoing postpetition obligations would seriously impact upon his ability to succeed with any Chapter 11 reorganization plan. *See,* 11 U.S.C. § 1112(b). Presently, there is no threat of injury or harm. The potential for harm to the debtor would result from the debtor's own conduct, the willful failure to meet the ordered postbankruptcy filing alimony payments, the collection of which from the debtor is not stayed by § 362(a). No basis exists to enjoin Mrs. Bible from pursuing the debtor or property that is not property of the estate for postbankruptcy filing temporary alimony payments.

■ The action for equitable distribution of marital property and for maintenance or support requires a different analysis. The debtor has set out five reasons why Mrs. Bible should not be given relief from stay to proceed with this action in state court. First, the debtor contends that his health does not permit him to travel to Greenville, South Carolina, for the trial or to assist his attorneys in preparing for the trial. The debtor's physician testified at the hearing that the debtor could travel by automobile and was not in need of continuous medical supervision. Subsequent to the hearing, however, the debtor's physician amended his testimony by affidavit with the consent of Mrs. Bible's counsel. By affidavit, the debtor's physician noted that the debtor's health had "deteriorated significantly" since the hearing, and the debtor had been hospitalized. The debtor is currently receiving continuous oxygen therapy, and his condition is critical. He is suffering from pneumonia, and other life threatening problems. The debtor, however, remains in his position as the debtor-in-possession in this case and is conducting his business activities in that capacity. *See,* 11 U.S.C. § 1107. No request for the appointment of a trustee has been made, but if the debtor is unable to conduct his business activities as a debtor-in-possession, a trustee may be required to carry out those activities.

Furthermore, whether to proceed with trial of the South Carolina action in view of the debtor's hospitalization and poor health is a determination that should be made by the Family Court Judge scheduled to hear the case. "Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this court." *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). The debtor, through his counsel, may request a continuance of the trial in the South Carolina action until his health improves.

Secondly, the debtor maintains that he cannot afford to finance the South Carolina litigation. The debtor has a net worth of approximately $7,000,000.00. His sched-

ules filed with his petition indicate more than Two Hundred Thousand and No/100 ($200,000.00) Dollars cash on deposit at various financial institutions. The court finds that the debtor does have the ability to fund the litigation.

Third, the debtor contends that the system utilized by South Carolina to elect its judges does not afford the debtor the impartial forum that this court or the courts of another state would afford him. The judges of the South Carolina courts are elected to the position by a majority vote of the 170 members of the South Carolina General Assembly. *See,* S.C. Const. art. V, §§ 3, 8, 13; S.C.Code Ann. §§ 20–7–1370, 20–7–1410. Mrs. Bible's counsel in the South Carolina action is a member of the South Carolina House of Representatives and chairman of the House Judiciary Committee. The debtor contends that because Mrs. Bible's attorney can vote in the election of a judge to the court considering the case, the court does not afford him the benefit of an impartial forum. However, the evidence presented at the hearing does not demonstrate any impropriety on the part of the judges in the South Carolina action. The judicial selection process in South Carolina requires individuals wishing to be considered for election to complete and submit an application to the Judicial Screening Committee made up of four members each from the South Carolina House of Representatives and Senate. The committee reviews the applications and reports to the legislature as a whole whether in the opinion of the committee the applicants are qualified to serve as a judicial officer. From the report and any additional nominations which may be made from the floor, the combined houses in a joint session elect the judges. *See,* S.C. Const. art. V, §§ 3, 8, 13; S.C.Code Ann. §§ 20–7–1370, 20–7–1410. The Judiciary Committee of the South Carolina House of Representatives does not deal with this process. Mrs. Bible's lawyer, as one of one hundred seventy members of the South Carolina Legislature, has one vote in the election. As the party opposing relief from stay, the debtor bears the burden of proof on this unfair forum opposition. 11 U.S.C. § 362(g). In spite of the impassioned and sincere plea of debtor's counsel in this case, the debtor has failed to put forth any evidence to carry the burden of proof by a preponderance of the evidence that the courts of South Carolina would not provide the debtor with a fair forum for resolving the issues raised in the South Carolina action.

Fourth, the debtor contends that this court should deny Mrs. Bible relief from stay because she is making unreasonable claims. However, the question of whether Mrs. Bible is making an unreasonable claim must be resolved under the applicable provisions of state law. In family law matters, a state forum is the best place to resolve these questions. "It is appropriate for bankruptcy courts to avoid incursions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters." *In re: MacDonald,* 755 F.2d 715, 719 (9th Cir.1985).

Fifth, the debtor maintains that this court should not allow the action to proceed in the Family Court in South Carolina as it will interfere with the ability of this court to supervise the administration of the debtor's property. The South Carolina action will not interfere with the supervision of the administration of the debtor's estate, but will fix the rights of Mrs. Bible as to any claim she may have against the bankruptcy estate. The filing of this Chapter 11 proceeding under 11 U.S.C. § 301 creates an estate comprised of all legal or equitable interests of the debtor in property as of the commencement of the case wherever located and by whomever held. 11 U.S.C. § 541(a). As debtor-in-possession, the debtor assumes all the rights, other than the right to compensation, and powers of a trustee as defined in the Bankruptcy Code. *See,* 11 U.S.C. § 1107.

Under 11 U.S.C. § 544, the debtor-in-possession is clothed with the status of a hypothetical lien creditor and a hypothetical bona fide purchaser of real property from the debtor. At the time the debtor filed his Chapter 11 petition, the debtor could have freely conveyed any property he owned

individually or had in his possession or control, free of Mrs. Bible's interests even though the South Carolina action had been filed. Under these circumstances, a judgment lien creditor seeking to execute on the debtor's property, or a bona fide purchaser of real property, would have taken title to that property free and clear of Mrs. Bible's interest. *See, Johnson v. Fisher (In re: Fisher*), 67 B.R. 666 (Bankr.D.Colo. 1986). Pursuant to 11 U.S.C. § 544, the rights of Mrs. Bible to specific marital property were terminated by the filing of the petition in bankruptcy.

However, no bankruptcy code provision terminates Mrs. Bible's right to be compensated from the debtor's estate for the value of her share of the marital property she may be entitled to receive. To determine the value of her claim, her share of the marital property must be established, as must her right to any maintenance or support. Such a determination is uniquely a problem of interpretation and application of state domestic relations law. As noted earlier, such applications and interpretations of state law provisions are best left to the expertise of the state courts. The bankruptcy court is not a domestic relations court. Therefore, to grant relief from stay to allow Mrs. Bible's rights to marital property and to maintenance and support to be determined in the state court action will not interfere with this court's ability to supervise the administration of the debtor's property, but rather will determine Mrs. Bible's claim against the bankruptcy estate. Such a claim can then be dealt with in the debtor's Chapter 11 plan, and Mrs. Bible can pursue her monetary claims as a creditor of the debtor.

"Alternatively phrased, the filing of a title 11 case creates an estate whose property rights vest as of the date of the filing of the petition. 11 U.S.C. § 541. Where the spouse's equitable distribution rights vest at sometime subsequent thereto, her rights, if any, are subject to the distributions and priorities mandated by the Bankruptcy Code. *See*, 11 U.S.C. § 507. Since the code gives her no right to a distribution of property of the estate superior to that of any other unsecured creditor, the bankruptcy court must supervise the entitlement in order to ensure the equality of distribution mandated by law.

Therefore, the stay imposed by 11 U.S.C. § 362 as it applies to an adjudication by the [Family Court of South Carolina] of the rights, obligations, duties and property interests of [Mrs. Bible] ... is hereby vacated. The stay is continued, however, with regard to enforcement of any decree of the [Family] court to the extent that it awards property of the estate to any entity other than the debtor. Any distribution of property of the estate shall proceed only in this court pursuant to the applicable provisions of title 11. To the extent of any such award by the [Family] court, this court shall then determine the dollar value of any right in property of the estate (giving, of course, due regard to proper findings, if any, of the [Family] court with respect to such valuation) and if the recipient of such matrimonial award has timely filed a claim in this proceeding, it shall be allowed to the extent that the value of the award would otherwise be a charge upon property of the estate."

*In re: Palmer,* 78 B.R. 402, 407 (Bankr.E. D.N.Y., 1987).

Based on the above analysis and in consideration thereof, it is hereby ORDERED that the preliminary injunction entered on January 18, 1990, is dissolved;

Further ORDERED that the automatic stay of 11 U.S.C. § 362(a) remain in full force and effect as it applies to any action for civil contempt to force the debtor or debtor's estate to pay Mrs. Bible temporary alimony which accrued prior to the debtor's bankruptcy filing;

Further ORDERED that the automatic stay of 11 U.S.C. § 362(a) is inapplicable as to the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding against the debtor to enforce payment of or the collection from property that is not property of the estate of postbankruptcy filing temporary alimo-

ny payments due for the months since the filing of the debtor's bankruptcy petition, i.e. February, 1990 forward.

Further ORDERED that relief from the automatic stay is granted to allow Mrs. Bible to proceed with the action for equitable distribution of marital property and for maintenance and support in the Family Court of South Carolina insofar as is necessary to establish Mrs. Bible's interest in the marital property and rights to alimony, maintenance or support. The automatic stay continues with respect to the enforcement of any decree of the Family Court of South Carolina to the extent that the court awards property of the estate to any entity other than the debtor.