**In re John B. PERRY, Debtor.**

**No. 90–42203–JFQ.**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 18, 1991.

---

John B. Perry, pro se.

Lawrence E. Cohen, Wolfson, Dodson, Keenan & Cotton, Worcester, Mass., for Brenda K. Perry.

## OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

Brenda K. Perry ("Mrs. Perry"), wife of the debtor John B. Perry (the "Debtor"), moves for relief from the automatic stay so that she may continue with her divorce action pending in the Probate and Family Court Department of the Trial Court of the Commonwealth of Massachusetts (the "Probate Court"). The Debtor opposes the motion and also moves for authority to sell two motor vehicles standing in his name, one of which is driven by Mrs. Perry, in order to raise funds for legal representation in this court and in the Probate Court. In the Probate Court, Mrs. Perry seeks a transfer of property standing in the Debtor's name, plus periodic payments of alimo-

ny and child support. I am therefore presented with the question of who has prior rights in a debtor's property during concurrent divorce and bankruptcy proceedings—the debtor's spouse or his creditors. It is an unsettled issue in this circuit. The decisions elsewhere are in disarray. *See* Judith Fitzgerald and Ramona Arena, *Wrestling with Bankruptcy and Divorce Laws in Property Division and Support Issues,* 6 *J.Am.Acad.Matrim.Law.* 1, 2 (1990).

## I. FACTS

Mrs. Perry commenced her divorce action on May 3, 1990; the Debtor filed his chapter 13 petition with this court on December 10, 1990. At the time of the chapter 13 filing, the Probate Court had entered only temporary alimony and child support orders. I issued an order early in the case modifying the automatic stay so that Mrs. Perry could proceed in the Probate Court to obtain a divorce and a modification of the existing temporary orders for alimony and child support. The order did not allow Mrs. Perry to obtain permanent alimony, permanent child support or a division of the Debtor's property until I devised a method to mesh the divorce proceeding with the chapter 13 case pending here. Further proceedings have since taken place in the Probate Court concerning temporary alimony and child support.

Until 1989, the Debtor was president and part owner of Fleet Electrical Services, Inc. In that year, he sold his stock interest and entered into a non-competition agreement providing monthly payments to him which terminate in November, 1992. He lists his 1990 gross income as $110,000, which apparently came from the non-competition payments. His only other assets of significant value consist of real estate. He owns as a tenant by the entirety with Mrs. Perry a farm in Sutton, Massachusetts which was the family home. He values this at $250,-000 and lists a $10,000 mortgage on the property. He also owns with Mrs. Perry a vacation home on a lake in the same town which he values at $100,000 subject to a mortgage of $7,000. Mrs. Perry lives on the farm with both children, over whom she now has sole custody. The parties keep horses there which are ridden by the children. The Debtor lives at his mother's home. The Debtor owns three automobiles, including a 1990 Ford truck driven by Mrs. Perry which is a subject of his motion to sell. His scheduled indebtedness consists of $53,233.12 in disputed federal and state income taxes and $4,000 in support furnished by his mother.

## II. MRS. PERRY'S RECORD PROPERTY INTERESTS

There is no dispute concerning the existence of Mrs. Perry's own property interests as a tenant by the entirety in the two residences. She continues to retain those interests, which will be converted to a tenancy in common once the divorce is granted. *Bernatavicius v. Bernatavicius,* 259 Mass. 486, 156 N.E. 685 (1927). The Debtor makes no claim to these interests under the Massachusetts statute discussed below. Mrs. Perry's joint real estate interests are not subject to sale by the Debtor under § 363(h) of the Bankruptcy Code. *See* 11 U.S.C. § 1303 (1988). The chapter 13 trustee (or a chapter 7 trustee following conversion) can sell that interest, and distribute its proceeds to her, only if the benefit to the estate from the sale outweighs the detriment it will cause her. 11 U.S.C. § 363(h)(3) (1988).

## III. PROPERTY DIVISION UNDER MASSACHUSETTS DIVORCE STATUTE

### A. *Operation of the Massachusetts Statute*

The more difficult questions, however, concern Mrs. Perry's rights with respect to the Debtor's joint real estate interests and the cars and other personal property owned by him. Mass.Ann. Laws ch. 208, § 34 (Law.Co-op.1991), quoted in part in the margin,[1] is a fairly typical statute govern-

---

1. Alimony and Assignment of Property; Considerations.

Upon divorce or upon a complaint in an action brought at any time after a divorce,

ing equitable transfer of property in a divorce proceeding. In addition to or in lieu of ordering payment of alimony, the Probate Court is authorized to transfer property from one spouse to the other. In ordering payment of alimony or in making property transfers, the probate judge is required to take into account a number of considerations. These include a few considerations which have nothing to do with earning capacity or support requirements, such as the length of the marriage, and a number of others which do, such as the parties' respective needs, employability and income. Also included is a factor which has particular application here—a party's liabilities. Although the probate judge necessarily has considerable discretion in applying the statute, the discretion is not unlimited. For example, the judge cannot make an equal division of property if this would cause the spouse who has little ability to earn income to have a substantially lesser standard of living than what was enjoyed before. *See Grubert v. Grubert,* 20 Mass App.Ct. 811, 483 N.E.2d 100 (1985).

### B. *Do Mrs. Perry's Contingent Rights in the Debtor's Property Constitute a Claim in Bankruptcy?*

■ Initial issues are presented concerning whether Mrs. Perry's contingent right to the Debtor's property constitutes a claim which will participate in bankruptcy, and whether this contingent right is a "debt" which is dischargeable under § 1328 of the

Bankruptcy Code. A "debt" is defined as "liability on a claim." 11 U.S.C. § 101(12) (1988 & Supp.1991). Section 101(5), in turn, defines "claim" as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

Because we are dealing here with a right with respect to property rather than a "right to payment," only subparagraph (B) concerning equitable remedies can have any possible application. As originally drafted and passed in the House, the definition of "claim" would have included a right to an equitable remedy for breach of performance even if the breach does not give rise to a right to payment. H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6266. The initial Senate version included only a "right to payment," and the present version was adopted as a compromise. S. 2266, 95th Cong., 2d Sess., § 101(4) (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5807–5808. As an example of the described equitable remedy, the legislative history mentions a right to specific per-

whether such a divorce has been adjudged in this commonwealth or another jurisdiction, the court of the commonwealth, provided there is personal jurisdiction over both parties, may make a judgment for either of the parties to pay alimony to the other. In addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other, including but not limited to, all vested and nonvested benefits, rights and funds accrued during the marriage and which shall include, but not be limited to, retirement benefits, military retirement benefits if qualified under and to the extent provided by federal law, pension, profit-sharing, annuity, deferred compensation and insurance. In determining the amount of alimony, if any, to be paid, or in fixing the nature and value of the property,

if any, to be so assigned, the court, after hearing the witnesses, if any, of each party, shall consider the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. In fixing the nature and value of the property to be so assigned, the court shall also consider the present and future needs of the dependent children of the marriage. The court may also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit.

formance with an alternative right to damages. 124 Cong.Rec. 32,393 (1978) (remarks of Rep. Edwards); *Id.* at 33,992 (remarks of Sen. DeConcini).

Relying in part on this legislative history, the Court in *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), held that a mandatory environmental clean up order obtained by the state of Ohio was a claim, and therefore dischargeable, because after the state had obtained the appointment of a receiver charged with performing the clean up the state was in actuality seeking only money from the debtor. Section 101(5) also includes the right to an equitable remedy even where the holder of the right seeks to enforce his equitable remedy, so long as he has an alternative right to damages. The most common example of this, referred to in the legislative history, is a breach of contract which gives rise to a right to damages or an alternative right to specific performance of the contract. Because of these alternative rights, the non-breaching party holds a claim. *In re A.J. Lane & Co.,* 115 B.R. 738 (Bankr. D.Mass.1990); Robert L. Warren & William D. Jordan, *Bankruptcy* 122 (2d ed. 1989). It is clear, furthermore, that the breach may consist of failure to perform a statutory duty as opposed to a contractual duty. *Ohio v. Kovacs,* 469 U.S. 274, 279, 105 S.Ct. 705, 708 (1985).

Mrs. Perry's rights fall outside the equitable remedy described in subparagraph (B). They do not arise "for breach of performance" of any obligation, whether contractual, statutory or otherwise. She will obtain property only if a probate judge determines that she is entitled to it after considering the factors set forth in the statute. Not even the factor described as "the conduct of the parties during the marriage" is dependent upon the breach of any legal obligation.

I therefore conclude that Mrs. Perry's rights under the statute do not constitute a claim. As a result, they are not dischargeable in this bankruptcy proceeding, nor do they participate with other claims in any bankruptcy distribution. Some of the decisions have come to this result on the ground that the non-debtor spouse's contingent rights are property interests recognizable in bankruptcy. *See, e.g., In re Wilson,* 85 B.R. 722 (Bankr.E.D.Pa.1988); *In re Levine,* 84 B.R. 22 (Bankr. S.D.N.Y.1988); *In re Ziets,* 79 B.R. 222 (Bankr.E.D.Pa.1987); *In re Baker,* 75 B.R. 120 (Bankr.D.Del.1987). Other decisions place a value upon the spouse's contingent property rights and treat them as a claim that participates in the bankruptcy distribution and is thereafter discharged. *See, e.g., Perlow v. Perlow,* 128 B.R. 412 (E.D.N.C.1991); *In re Bible,* 110 B.R. 1002 (Bankr.S.D.Ga.1990); *In re Elrod,* 91 B.R. 187 (Bankr.M.D.Ga.1988); *In re Palmer,* 78 B.R. 402 (Bankr.E.D.N.Y.1987); *In re Fisher,* 67 B.R. 666 (Bankr.D.Colo.1986).

### C. Are Mrs. Perry's Contingent Rights to the Debtor's Property Otherwise Cognizable in Bankruptcy?

Not being dischargeable in bankruptcy, Mrs. Perry's rights will survive these proceedings. But that is cold comfort to her if the property to which they relate is sold to pay creditors. The question is whether they constitute property interests which are excluded from the bankruptcy estate.

#### 1. Her Rights Considered as Beneficial Property Interests

The bankruptcy estate includes, with exceptions not relevant here, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1988). The Debtor's ownership of the cars and his joint interest in the two homes obviously places such property in the bankruptcy estate at least to the extent of his legal or record interest. But what of the equitable or beneficial interest in this property? Is it held by the Debtor or Mrs. Perry?

■ Mrs. Perry's rights with respect to any portion of the Debtor's property are contingent upon the Probate Court deciding that she is entitled to the property by reason of the various considerations set forth in the statute. In so doing, the court is required to apply basic principles of economic and social justice. In their dependence upon such principles, Mrs. Perry's

rights are similar to those of the beneficiary of a constructive trust. A constructive trust is a remedial device designed to prevent unjust enrichment. 1 G. Palmer, *The Law of Restitution*, §§ 1.3, 1.4 (1978); 5A Scott, *The Law of Trusts*, §§ 461, 462 (4th ed. 1989); *Restatement of Restitution*, § 160, Comment a (1937). A court will declare a party constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach of duty or under other circumstances indicating that he would be unjustly enriched in retaining it. *Id.; Nessralla v. Peck*, 403 Mass. 757, 762–53, 532 N.E.2d 685, 689 (1989); *Barry v. Covich*, 332 Mass. 338, 342, 124 N.E.2d 921, 924 (1955).

■ The Bankruptcy Code recognizes and excludes from the bankruptcy estate such beneficial property interests. Under § 541(d), property in which the debtor held "only legal title and not an equitable interest, such as a mortgage secured by real property ... becomes property of the estate ... only to the extent of the debtor's legal title to such property...." The statute excludes from the estate more than the beneficial interests of others in real estate mortgages; it applies to equitable interests generally, including trust interests. *Begier v. I.R.S.*, — U.S. —, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990); *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205, n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983). Its application to constructive trust interests is confirmed by the House and Senate reports, both of which state:

Situations occasionally arise when property ostensibly belonging to the debtor will actually not be the property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in constructive trust for the person to whom the bill was owed. H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 (1977). S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6324.

■ Mrs. Perry's interests are even more compelling than those of a constructive trust beneficiary. The beneficiary of a constructive trust typically has a monetary claim which the constructive trust is designed to satisfy in whole or part. If the trust were not recognized in bankruptcy, the claimant would at least participate with other claimants in the bankruptcy distribution. As we have seen, that is not the situation here. Because Mrs. Perry's rights do not constitute a claim, she is denied the opportunity to participate with creditors in this proceeding. There is therefore no reason to interpret the broad exclusion of "an equitable interest" under § 541(d) to refer only to trust interests.

### 2. Effect of the "Strong–Arm" Powers of § 544(a)

■ Section 544(a) of the Bankruptcy Code,[2] the so-called "strong-arm clause," does not operate to deprive Mrs. Perry of whatever beneficial interest a court may award her in the Debtor's property. The

**2.** 11 U.S.C. § 544(a) (1988) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

express rights and powers given a chapter 13 debtor do not include § 544(a) avoidance powers. 11 U.S.C. § 1303 (1988). In light of the broad grant of powers to the estate's representative under the other chapters, the plain meaning of § 1303 is that a chapter 13 debtor has no § 544(a) powers. 11 U.S.C. § 1107 (1988) (granting debtor-in-possession all rights of a trustee); *In re Carter*, 2 B.R. 321 (Bankr.D.Colo.1980) (chapter 13 debtor lacks strong-arm powers). *See generally* Keith M. Lundin, *Chapter 13 Bankruptcy* § 3.38 (1990) (discussing conflict in the decisions on the question).

■ The chapter 13 trustee, however, does have § 544(a) powers. Chapters 1, 3 and 5 are expressly applicable to cases under chapter 13. 11 U.S.C. § 103(a) (1988). There is general agreement that the chapter 13 trustee has such powers. Keith M. Lundin, *Chapter 13 Bankruptcy* § 3.64 (1990).

■ Mrs. Perry's beneficial interests would nevertheless survive a § 544(a) attack. I have recently treated at some length the ability of a constructive trust beneficiary to prevail against the strong-arm powers. See *In re Mill Concepts Corp.*, 123 B.R. 938, 940–947 (Bankr.D.Mass.1991). I there held that under § 544(a)(3) the estate representative's rights as a *bona fide* purchaser of real property are limited to avoiding transfers of real property made by a debtor, so that they have no application to property retained by a debtor subject to constructive trust. I came to this conclusion based upon the wording of the statute, its legislative and judicial history, its purpose, and the consistency thereby wrought between § 544(a)(3) and the design under § 541(d) to preserve constructive trust interests in bankruptcy. The same reasoning applies to Mrs. Perry's equitable interests.

The trustee's rights under § 544(a)(1) and (2) as a judicial lien or judgment creditor are also junior to such equitable interests. *E.g., N.S. Garrott & Sons v. Union Planters Nat'l Bank (In re Garrott & Sons, Inc.)*, 772 F.2d 462, 467 (8th Cir.1985) (constructive trust for the benefit of mort-gagee imposed upon escrow fund needed to pay mortgage); *City Nat'l Bank of Miami v. General Coffee Corp. (In re General Coffee Corp.)*, 828 F.2d 699, 706 (11th Cir. 1987), *cert. denied, General Coffee Corp. v. City Nat'l Bank*, 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988) (constructive trust imposed upon inventory in favor of bank defrauded of funds used to purchase inventory); *Vineyard v. McKenzie (In re Quality Holstein Leasing)*, 752 F.2d 1009, 1012 (5th Cir.1985) (priority of rights of constructive trust beneficiary over strong-arm powers affirmed in principle); *Automatic Canteen Co. v. Wharton (In re Continental Vending Machine Corp.)*, 358 F.2d 587 (2d Cir.1966) (constructive trust declared in debtor's proceeds from sale of property previously received by debtor through fraudulent transfer); *Shipley Co., Inc. v. Darr (In re Tap, Inc.)*, 52 B.R. 271 (Bankr.D.Mass.1985) (funds of debtor operating payroll service impressed with trust for benefit of customer's payroll); *In re Jeandros Dye & Print Works, Inc.*, 22 F.Supp. 26 (D.Mass.1938) (rescission of discharge of chattel mortgage permitted against trustee on ground of mistake; only good faith purchasers can defeat rescission rights under Massachusetts law); *Restatement of Restitution* § 173 (1937) (beneficiary of constructive trust has priority over creditor who obtains judicial lien without knowledge of circumstances creating trust).

Some of the decisions limiting the non-debtor spouse's rights to an unsecured claim do so in part because of the strong-arm powers of the estate representative, particularly the powers of a bona fide purchaser of real property. *See, e.g., In re Bible*, 110 B.R. 1002, 1010 (Bankr.S.D.Ga. 1990); *In re Elrod*, 91 B.R. 187, 189 (Bankr.M.D.Ga.1988); *In re Fisher*, 67 B.R. 666, 669 (Bankr.D.Colo.1986). With these decisions I respectfully disagree. Other decisions protect the non-debtor spouse's rights on the assumption that they are property interests recognizable in bankruptcy, without analysis of the property interests or why they are not a claim. *See, e.g., In re Levine*, 84 B.R. 22 (Bankr.

S.D.N.Y.1988); *In re Baker*, 75 B.R. 120 (Bankr.D.Del.1987). These latter decisions arrive at the same result I do, but by a somewhat different route.

### D. *Which Court Should Adjudicate Mrs. Perry's Rights?*

■ We are left with the question of whether Mrs. Perry's rights under the Massachusetts statute should be adjudicated by the Probate Court or by this court. As is true of all other issues concerning this subject, the decisions are in conflict. A number of courts permit the divorce court to perform the task in the belief that it has superior experience and expertise in such matters. *E.g., In re Levine*, 84 B.R. 22 (Bankr.S.D.N.Y.1988); *In re Baker*, 75 B.R. 120 (Bankr.D.Del.1987). One bankruptcy court has chosen to apply the state divorce statute itself, seeing no complexity in the law and believing that there is an advantage in having the rights of the spouse and creditors adjudicated in one forum. *In re Ziets*, 79 B.R. 222, 227 (Bankr. E.D.Pa.1987). Another bankruptcy judge in the same district has permitted adjudication of the issue in the divorce court, not because of the divorce court's greater expertise but that court had already scheduled a hearing on the matter. *See In re Wilson*, 85 B.R. 722, 729 (Bankr.E.D.Pa. 1988).

Mrs. Perry's property rights· cannot be separated from her alimony rights. The statute requires that the same factors be considered with respect to· both. Few would suggest that I should fix the amount of periodic alimony or child support, even though in a chapter 13 case (as opposed to cases under chapter 7 or 11) a debtor's income from personal services rendered during the case is part of the bankruptcy estate. 11 U.S.C. §§ 541(a)(6), 1306(a)(2) (1988). If the Probate Court is permitted to determine only alimony, however, it cannot do so in any intelligent way without knowing what portion, if any, of the Debtor's property is to be transferred to Mrs. Perry. The Probate Court, moreover, does have greater expertise in these matters.

The question of which court should adjudicate these issues is nevertheless not without difficulty. There is some merit to the suggestion that I may be abrogating my responsibilities if I permit the Probate Court to adjudicate the transfer of any and all property standing in the Debtor's name. A transfer of substantially all such property to Mrs. Perry would obviously leave creditors with little or nothing in the bankruptcy estate. The Debtor's obligations for alimony and child support, moreover, are not dischargeable, whereas even his recent income tax obligations are dischargeable in this chapter 13 proceeding. 11 U.S.C. §§ 523(a)(5), 1328(a) (1988). I find comfort, however, in the statute's requirement that the Probate Court consider the liabilities as well as the needs of each of the parties.

Mrs. Perry's rights seem most compelling with respect to the vehicle she drives and the farm where she and the two children live. Clearly, the Probate Court should adjudicate these rights. The Probate Court should also determine Mrs. Perry's permanent alimony and child support because this requires the same considerations under the same statute, notwithstanding that the Debtor's earnings are property of the estate. *See* 11 U.S.C. § 1306(a)(2) (1988). This leaves, primarily, the question of which court should adjudicate Mrs. Perry's rights in the vacation home. I will permit the Probate Court to adjudicate these rights as well because of the holistic nature of the task.

### III. CONCLUSION

Due to the pendency of the parties' divorce at the time of the bankruptcy filing, the potential transfer of the Debtor's property to Mrs. Perry under the Massachusetts divorce statute gives her a contingent equitable interest in the Debtor's property. She is not, however, the holder of a claim. Her property interest prevails over the § 544(a) strong-arm powers possessed by the estate's representative. The Probate Court should adjudicate Mrs. Perry's property rights as well as her entitlement to periodic alimony and child support payments.

An order has issued modifying the automatic stay to permit the Probate Court to proceed in accordance with the foregoing. A separate order allows the Debtor's motion for authority to sell one of the two vehicles he desires to sell to raise counsel fees. The truck driven by Mrs. Perry is excluded from this authorization.