In re **REVERE COPPER AND BRASS, INCORPORATED, Debtor.**

**UNITED STATES TRUST COMPANY OF NEW YORK, as Successor Indenture Trustee, Plaintiff,**

v.

**REVERE COPPER AND BRASS, INCORPORATED, and Marine Midland Bank, N.A., Defendants.**

Bankruptcy No. 82 B 12073 (PBA). Adv. No. 85–5794A.

United States Bankruptcy Court, S.D. New York.

Aug. 9, 1985.

Curtis, Mallet-Prevost, Colt & Mosle by John P. Campbell, New York City, for the U.S. Trust Co. of New York.

Weil, Gotshal & Manges by Stephen Karotkin, New York City, for Revere Copper and Brass, Inc.

## MEMORANDUM DECISION AND ORDER

PRUDENCE ·B. ABRAM, Bankruptcy Judge:

The United States Trust Company as Successor Indenture Trustee ("U.S. Trust" or "Indenture Trustee") under the December 15, 1967 indenture for the 5½% convertible subordinated debentures (the "Debentures") of Revere Copper and Brass Incorporated ("Revere" or "Debtor") commenced this adversary proceeding against Revere on May 10, 1985. In its complaint, U.S. Trust sought:

(1) to compel Revere to void the Harvard transaction discussed below and to account for certain of the Debentures affected by that transaction as outstanding and to make appropriate corresponding changes in its plan of reorganization to reflect the fact the affected debentures are outstanding; and

(2) to require Revere to remove the claim of Marine Midland Bank, N.A., in the ("Marine") amount of $1,769,913.13 from Class 6 Bank Debt and to place it in Class 8, the class of the Debentures, as a claim for $2,425,000.

In addition, by objection dated May 15, 1985, U.S. Trust objected to the claim filed by Marine to the extent of $1,769,913.13 on the ground that the claim to that extent is unenforceable against the Debtor and property of the Debtor. As additional support for its motion, U.S. Trust referred to the adversary proceeding against Revere.

Revere filed its answer in which it asserted, among other defenses, that the complaint failed to state a claim for relief and that the disputed debentures had been cancelled and were no longer outstanding. Following a June 25 pretrial conference, the court issued its order directing the parties to show cause why the adversary proceeding and the objection should not be consolidated for the purpose of trial. The court order further directed Marine to file a response to the objection, which it did. Marine, U.S. Trust and Revere agreed by stipulation that the two matters would be heard together. In addition, the stipulation provided that Marine would be added as a party defendant to the adversary proceeding.

The dispute centers around the so-called Harvard transaction. On November 12, 1981, Revere and the President and Fellows of Harvard College ("Harvard") entered into a two-page letter agreement. Under this agreement, Revere could require Harvard to sell ("call"), and Harvard could require Revere to purchase ("put"), the $2,425,000 face value of the Debentures held by Harvard (the "Harvard Debentures") for $1,721,750, plus interest. Revere had the right to call the Harvard Debentures on or after January 4, 1982 but no later than October 20, 1982. Harvard had the right, if the Harvard Debentures had not been previously called, to put them to Revere on or after October 1, 1982, but not later than October 20, 1982. If either side exercised its option, the transaction was to be completed on October 25, 1985, by delivering the Harvard Debentures to U.S. Trust in exchange for full payment.

In the November 12, 1981 agreement, Revere agreed to obtain from Marine a standby letter of credit in favor of Harvard in an amount at least equal to the purchase price. Under date of November 23, 1981, Marine issued a letter of credit in Harvard's favor in the amount of $1,770,000 with an expiration date of November 12, 1982.

Subsequent to October 1, 1982, Harvard exercised its right to require Revere to purchase the Harvard Debentures. On October 25, 1982, Revere delivered its check for $1,769,913.13 payable to Harvard to U.S. Trust, who had by then received the Harvard Debentures from Harvard. U.S. Trust transmitted Revere's check to Harvard. Revere's check was returned to Harvard unpaid a few days later.

It appears that on October 25, 1985, U.S. Trust defaced or mutilated the certificates representing the Harvard Debentures in the customary fashion to indicate cancellation by punching holes through certain signatures on the certificates. U.S. Trust also made an entry in its ledger card for the debenture issue showing that the Harvard Debentures had been cancelled.

Revere submitted the Harvard Debentures to U.S. Trust for cancellation in order to satisfy Revere's obligation under the December 15, 1967 trust indenture governing the Debentures to make the required sinking fund payment due December 15, 1982. The terms of the trust indenture gave Revere the option to make a cash payment or to tender Debentures for cancellation in satisfaction of the sinking fund requirement. In the years prior to 1982, Revere met its sinking fund obligation by the tender of purchased Debentures rather than through a cash payment. The basic procedure followed was as follows: Revere would give the Indenture Trustee a check for payment of the debenture purchase price. U.S. Trust would accept the debentures from the seller and tender Revere's check in exchange. The Indenture Trustee would then effect the cancellation of the surrendered debentures in satisfaction of the sinking fund payment.

On October 27, 1982 Revere and a number of its subsidiaries and affiliates filed petitions for reorganization under Chapter 11.

When Harvard learned that Revere's check had been dishonored, it immediately sought to call upon the letter of credit issued by Marine. Harvard encountered various problems in attempting to supply the documents required by the letter of credit. In particular, Harvard was required to present a certificate from U.S. Trust that Harvard had not received payment for the Harvard Debentures. After litigation in both the bankruptcy court and the federal district court, U.S. Trust supplied an acceptable certificate and in February 1983 Marine made payment to Harvard as directed by an order of the district court.

Both Revere and Marine have urged that the court find that the Harvard Debentures have been cancelled. U.S. Trust would have the court find that the Harvard Debentures are still outstanding and that Marine is subrogated to the rights of Harvard to the Harvard Debentures.

U.S. Trust has taken the position that since the registrar for the debenture issue,

which was another bank, was never asked by U.S. Trust to reflect that the Harvard Debentures had been cancelled, the Harvard Debentures must therefore be outstanding. It appears that U.S. Trust still has in its possession the mutilated Harvard Debentures and that the normal process by which those debentures would have been transferred to the registrar was interrupted when Revere filed its Chapter 11 petition and Revere's check was returned unpaid.

No simplistic analysis of the physical acts, or non-acts, of U.S. Trust or the registrar with respect to the Harvard Debentures will answer the question of whether these debentures have been cancelled. Moreover, as the discussion below makes clear, the question is beside the point in determining the right of Marine to a Class 6 bank claim. None of the parties appear to have considered the possibility that the Harvard Debentures could be outstanding, yet Marine still have a Class 6 claim.

The thrust of U.S. Trust's arguments is predicated on the fact that the final acts pertaining to the purchase and tender of the Harvard Debentures occurred immediately prior to the filing of Revere's Chapter 11 petition. However, U.S. Trust has lost sight of the four separate contracts involved and the dates when those contractual obligations were incurred. The first contract was, of course, Revere's obligation under the trust indenture to U.S. Trust to make a sinking fund payment by December 15, 1982. The second contract was Revere's obligation to Harvard in accordance with the terms of the November 23, 1981 agreement. The third contract was the November 23, 1981 letter of credit between Harvard and Marine, and the fourth contract was Revere's obligation to Marine incurred when Revere purchased the letter of credit in favor of Harvard. Although all four contracts are closely interrelated, they are separate and distinct obligations merit-

ing individual analysis. When all four are lumped together, the ramifications of each set of rights and duties get lost. Additional clarity can be obtained by consideration of the impact of alternative fact scenarios.

Suppose for the moment that Harvard had exercised its right to put the Harvard Debentures to Revere, duly delivered them to U.S. Trust but that Revere failed or refused to deliver its check to U.S. Trust for redelivery to Harvard. Had that happened, Harvard could have sued Revere for the purchase price, see N.Y.U.C.C. § 8–107(2), or Harvard could then have made claim against Marine for payment under the terms of the letter of credit and Marine would in turn make a claim against Revere. (In fact, had Revere defaulted, Harvard would probably have been saved litigation time and expense because U.S. Trust would have been clear that Harvard had not been paid.) From this analysis it is thus apparent that Revere's delivery of the check in October 1982 was immaterial to Marine's claim against Revere.

Suppose another variant: that the place of exchange between Revere and Harvard was to be somewhere other than U.S. Trust and Revere tendered the check which was returned unpaid. Harvard would still make a claim under the Marine letter of credit and Marine would still have a claim against Revere. However, Revere would hold the Harvard Debentures and they would be outstanding.

■ As these examples illustrate, the reason why the Harvard Debentures are not now outstanding is not related to the Revere-Harvard, Revere-Marine or Harvard-Marine contracts. It is the result of the Revere-U.S. Trust contract. The Harvard Debentures have been cancelled because Revere caused them to be delivered on its behalf to U.S. Trust in satisfaction of Revere's December 15, 1982 sinking fund obligation.[1] U.S. Trust cancelled the Har-

---

**1.** When analyzed separately this way, it becomes glaringly obvious that Revere did not redeem the Harvard Debentures within the meaning of the Trust Indenture. It is therefore unnecessary to discuss U.S. Trust's contention

that Revere would have been legally prohibited from redeeming any of the Debentures in October 1982 because it was alleged to be in default under the terms of the Trust Indenture. However, it is worth nothing in passing that the

vard Debentures to evince satisfaction of Revere's December 15, 1982 sinking fund obligation.

It would appear to be in the best interests of the debentureholders to insist that Revere tendered the Harvard Debentures and that they have been cancelled because it reduces the outstanding amount of the issue and increases the return to the remaining debentureholders. If the Harvard Debentures were outstanding, Revere's other creditors (or Marine, if it had rights of subrogation) could insist on a pass-through of Revere's pro-rata debenture distribution. In addition, Marine would still have its claim to reimbursement under the letter of credit. See N.Y.U.C.C. § 3–114(3).

■ U.S. Trust asserts that Marine's claim against Revere did not arise until February 1983 when Marine paid the letter of credit. That assertion ignores the fact that Revere had a contingent obligation to Marine in November 1981 when the letter of credit was issued. A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Bankruptcy Code § 101(4)(A).

> "By this broadest possible definition and by the use of the term throughout the Title 11, especially in subchapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court." Notes of Committee on the Judiciary, Senate Report, No. 95–989.

Revere's obligation to Marine is a classic example of a contingent claim. It makes no difference to the allowability of Marine's claim that the contingency did not occur until after the petition was filed since Revere's obligation was in effect on the petition date. See generally *In re All Media Properties*, 5 B.R. 126 (Bankr.W.D. Tex.1980). See also *In re Braniff Airways, Inc.*, 42 B.R. 443, 451 (Bankr.W.D. Tex.1984). Marine's claim became noncontingent and liquidated at the time the letter of credit was paid. See also Bankruptcy Code § 502(c)(1) (contingent or unliquidated claims shall be estimated if fixing or liquidating would unduly delay the administration of the case).

The same analysis makes it clear that Harvard's rights against Revere did not arise in October 1982 but arose at the time of the November 1981 agreement. That Harvard's claim would have ceased if neither party exercised its right is merely part of the contingent nature of the claim.

Marine's claim is based, and always has been based, upon the letter of credit. Thus its claim has been properly classified under Class 6 Bank Claims. The assertion that Marine ought to be classified with the Class 8 Subordinated Creditors is untenable. Neither logic, equity, nor the law provide a sufficient basis for treating Marine's claim under the letter of credit as that of a Class 8 creditor.

■ U.S. Trust has also raised the spectre of securities fraud in connection with the issuance of the letter of credit and the purchase agreement for the Harvard Debentures. U.S. Trust asserts that Revere and derivatively Marine violated Section 10(b), and Rule 10b–5 thereunder, of the Securities and Exchange Act of 1934 by failure to disclose the letter of credit and the purchase agreement with Harvard as "material inside information." Since the Debentures were publicly traded securities, U.S. Trust argues that the cases regarding letters of credit in commercial transactions do not apply, but rather that the securities

---

court does not agree that Revere committed an event of default under the Indenture in early and mid-October 1982. An "Event of Default" as defined by Section 7.01 of the Indenture includes "the taking of corporate action by the Company in furtherance" of bankruptcy or similar proceedings. This court is of the view that

no corporate action within the meaning of the Indenture was taken until the passage of a resolution by Revere's Board of Directors on October 26, 1982 approving the filing of the Chapter 11 petition. Contingency planning and discussions prior thereto do not rise to the level of corporate action.

fraud provisions of the federal law should preclude this court from giving any effect to the letter of credit. This approach would fuse the letter of credit with the obligations of and dealings between Harvard and Revere. This is contrary to the approach generally taken with regard to letters of credit, wherein they are viewed as financing mechanisms that are distinct from the underlying transaction. See *Marino Industries Corp. v. Chase Manhattan Bank, N.A.,* 686 F.2d 112 (2d Cir.1982); and *Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461 (2d Cir.1970). See also Baird, Standby Letters of Credit in Bankruptcy, 49 U.Chic.L.Rev. 130 (1982).

The elements of a securities fraud action under Section 10(b) and Rule 10b–5 include, *inter alia,* materiality of the undisclosed information and scienter. See *Reiss v. Pan American World Airways, Inc.,* 711 F.2d 11 (2d Cir.1983) (Non-disclosure of merger negotiations at time of initial call of convertible debentures does not violate anti-fraud provisions of Rule 10b–5). The United States Supreme Court has set a high standard for materiality. See *TSC Industries v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). The proof adduced at trial comes nowhere near creating even a prima facie case of securities fraud.

According to U.S. Trust, Harvard's requirement of a letter of credit was due to Harvard's view in November 1981, which was nearly a year before the Chapter 11 filing, that Revere was in financial trouble. Accordingly, it is U.S. Trust's contention that although it may not have been necessary to disclose publicly the purchase agreement with Harvard, it was material and necessary to disclose Harvard's assessment of Revere's possibly precarious financial situation.

U.S. Trust failed to offer any admissible evidence whatsoever setting forth the reasons for Harvard's requirement for a letter of credit. The "facts" are no more than mere conjecture on the part of U.S. Trust. It is just as logical to suppose that Harvard insisted on the letter of credit because of its own investment guidelines. Furthermore, it strains this court's credulity to think that Marine would have issued an unsecured letter of credit at Revere's request if Harvard had made such an adverse credit judgment.

The Harvard Debentures are hereby found to have been cancelled. Marine is found to have a Class 6 claim based on the letter of credit. No securities law violation is found.

The adversary proceeding commenced by U.S. Trust on May 10, 1985 is hereby dismissed. U.S. Trust's objection to the allowance of claim dated May 15, 1985 is hereby overruled.

It is so ordered.