**In re A.J. LANE & CO., INC., Lane Homes, Inc., Lane Management, Inc. Fountainhead Associates of Westborough, Andrew J. Lane, Debtors.**

**A.J. LANE & CO., INC., Plaintiff,**

**v.**

**The BSC GROUP and Home Federal Savings Bank, Defendants.**

Bankruptcy Nos. 89–40268–JFQ, 89–40272–JFQ.

Adv. P. No. 89–4108.

United States Bankruptcy Court, D. Massachusetts.

June 13, 1990.

Charles Dougherty, Hill & Barlow, Boston, Mass., for debtor/plaintiff.

Alan Brams, Stevenson, Johnson & Brams, Worcester, Mass., for Home Federal Sav. Bank defendant.

Michael J. Beatrice, Murray & Associates, Boston, Mass., for defendant/BSC Group.

OPINION

JAMES F. QUEENAN, JR.,
Bankruptcy Judge.

Cross-motions for summary judgment present the question of whether a Chapter 11 debtor should be compelled to execute documents necessary to draw upon a letter of credit. I hold that the debtor should not be so compelled because the obligation to provide the documents creates a claim which is allowable and dischargeable in bankruptcy.

Prior to this Chapter 11 proceeding, BSC Group, Inc. ("BSC") brought suit in state court against A.J. Lane & Co., Inc. (the "Debtor") seeking payment for engineering, surveying and consulting services in the sum of $186,051.21 plus attorney's fees. At the commencement of that suit, BSC obtained an attachment of a bank account of the Debtor. Thereafter, on October 19, 1988, the Debtor and BSC executed an agreement whereby the bank account attachment was released and replaced by a $150,000, one-year letter of credit which the parties intended to renew annually until entry of a final judgment in the underlying action. If in any year the Debtor failed to provide a renewed letter of credit, the Debtor agreed to provide an executed stipulation for entry of partial judgment in the sum of $150,000 and a statement required under the letter of credit certifying to the entry of partial judgment in that amount. On that same day, October 18, 1988, Home Federal Savings Bank (the "Bank") issued a letter of credit pursuant to the parties' agreement. The letter of credit obligated the Bank to pay BSC a maximum of $150,-000 if, no later than October 18, 1989, BSC presented the Bank with its draft within that amount. Most important for our purposes, BSC's draft had to be accompanied by a statement signed by the Debtor (as well as BSC) certifying to the entry of final judgment in the state court for no less than the amount of BSC's draft. An affiliate of the Debtor gave the Bank a mortgage covering Massachusetts real estate to secure the Bank's indemnification rights against the Debtor under the letter of credit.

The Debtor, a real estate developer, filed its Chapter 11 proceeding on March 24, 1989. On June 26, 1989, with no objection from the Debtor, I allowed BSC's motion to vacate the automatic stay and authorized BSC to "continue the litigation with A.J. Lane & Co., Inc. which is pending in Suffolk Superior Court." Thereafter, in the following October, the Debtor (as debtor in possession) declined to provide BSC with either a renewed letter of credit or the documents necessary for BSC to draw upon the letter of credit then in existence. BSC filed a motion in state court seeking an order compelling the Debtor to execute the required agreement for judgment for $150,-000 and certification of entry of judgment. The state court declined to rule on the matter, urging the Debtor to obtain a renewed letter of credit. On October 17, 1989, in response to the Debtor's motion, I modified and clarified my prior order of June 26, 1989 so as to continue to allow BSC to litigate the issue of liability but to "continue the automatic stay, as was the court's intention on June 26, 1989, against BSC taking any action to collect, realize upon, or secure its claim." I also required that "disputes concerning the ... letter of credit ... be adjudicated in this court only."

With the letter of credit about to expire on October 19th, BSC immediately appealed the order of October 17th to the district court. On October 18th, the district court ordered the Debtor to execute the documents required to draw upon the letter of credit, and further ordered that the $150,-000 of proceeds be placed in escrow with the parties' attorneys, to be released "upon agreement of the parties or upon the final order of the Bankruptcy Court, after passage of any appeal period or upon final mandate upon review." The Bank subsequently moved in the district court for an order substituting a new letter of credit for the escrow fund, and on November 16, 1990 the district court vacated its prior order requiring funding of the letter, and ordered the Bank to extend the letter "until further order of the Court," requiring that the extended letter be held by BSC's counsel "until further order of this Court." The Debtor thereafter commenced the present adversary proceeding in this court against BSC and the Bank seeking judgment declaring that as of October 18, 1989, as a result of the bankruptcy filing, the Debtor did not have a specifically-enforceable obligation to execute the documents necessary for BSC to draw upon the letter of credit.

It seems reasonably clear, as a preliminary matter, that the district court did not intend to withdraw jurisdiction from this court to adjudicate the parties rights concerning the letter of credit, subject to normal appellate review. Its order of October 18, 1989 expressly made the escrow fund established thereunder subject to the order of the "Bankruptcy Court." True, the later order of November 16th required that the new letter of credit be substituted for the escrow held by BSC's counsel until further order of "this Court." But the pleadings and transcript in connection with that hearing indicate that the district court intended only to change the prior order by substituting a new letter of credit for the escrow arrangement. Throughout the hearing, the district court judge demonstrated his concern that the status quo be maintained so that BSC would not be deprived of whatever rights it had by the mere lapse of time during the course of litigation, which was to be conducted in the first instance here. The reference to "this Court" in the November 16th order must therefore be taken to refer to an order issued by the district court on appeal from the subsequent order of the bankruptcy court.

## I. PAYMENT UNDER THE LETTER OF CREDIT—ITS EFFECT UPON THE DEBTOR

■ The Debtor says that payment under the letter of credit would constitute the act of securing BSC's unsecured claim after the Chapter 11 filing, conduct stayed by 11 U.S.C. § 362(a). Although payment would certainly amount to BSC realizing upon its security, payment under the letter would involve no transfer of assets of the Debtor protected by § 362. *Lower Brule Constr. Co. v. Sheesley's Plumbing &*

*Heating Co., Inc.,* 84 B.R. 638, 644 (D.S.D. 1988); *North Shore & Central Ill. Freight Co. v. American National Bank & Trust Co. of Chicago (In re North Shore & Central Illinois Freight Co.),* 30 B.R. 377, 379 (Bankr.N.D.Ill.1983). Upon making the payment, the Bank would acquire the right to be indemnified by the Debtor. But this involves no transfer of the Debtor's property. Prior to payment, the Bank has a contingent claim; this claim becomes absolute upon payment. *United States Trust Co. of New York v. Revere Copper & Brass, Inc. (In re Revere Copper & Brass, Inc.),* 60 B.R. 887, 891 (Bankr.S.D.N.Y. 1985). Nor can there be a post-petition transfer of the Debtor's property by reason of the Bank having a mortgage from the Debtor to secure its right of indemnification. The security interest under this mortgage was transferred earlier, at the time when the mortgage was granted and the Bank gave value through its commitment under the letter of credit. Mass.Ann. Laws ch. 183, § 18 (Law.Co-op.1987); *Page v. First Nat'l Bank of Maryland (In re Page),* 18 B.R. 713, 716 (D.C.1982); *Briggs Transportation Co. v. Norwest Bank Minneapolis, N.A. (In re Briggs Transportation Co.),* 37 B.R. 76, 80 (Bankr.D.Minn. 1984); *In re M.J. Sales & Distributing Co., Inc.,* 25 B.R. 608, 616 (Bankr.S.D.N.Y. 1982). *See also,* Mass.Ann. Laws ch. 106, § 9–203 (Law.Co-op.1984). *Contra Twist Cap, Inc. v. Southeast Bank of Tampa (Matter of Twist Cap, Inc.),* 1 B.R. 284, 287 (Bankr.D.Fla.1979).

## II. OBLIGATION OF DEBTOR TO FURNISH DOCUMENTS AS A MONETARY CLAIM ALLOWABLE AND DISCHARGEABLE IN BANKRUPTCY

■ The Debtor's principal argument, however, is independent of any issue of post-petition security transfer. It stresses that the October 18, 1988 letter of credit is different from the typical standby letter of credit in that a draw upon it requires documentation from the customer, the Debtor, rather than the customary certification from only the beneficiary, BSC. Both parties were indeed required jointly to certify

to the Bank that the $150,000 judgment was in effect. Without that certification, the necessary documentation is lacking and the Bank has no liability under the letter. *Sisalcords Do Brazil, Ltd. v. Fiacao Brasileira De Sisal, S.A.,* 450 F.2d 419, 422 (5th Cir.1971), *cert. denied,* 406 U.S. 919, 92 S.Ct. 1771, 32 L.Ed.2d 118 (1972) (bank obligated to honor drafts drawn and negotiated only in strict compliance with the terms of the letter of credit); *Banco Espanol de Credito v. State Street Bank & Trust Co.,* 385 F.2d 230, 234 (1st Cir.1967); *Far Eastern Textile, Ltd. v. City Nat'l Bank & Trust Co.,* 430 F.Supp. 193, 195 (S.D. Ohio 1977); Mass.Ann. Laws Ch. 106, § 5–114(1) (Law.Co-op.1984). The Debtor concedes, as it must, that the agreement of October 19, 1988 obligated it to sign both a judgment certification and an agreement for judgment. But the Debtor contends that its obligation to do so has been transformed through the bankruptcy filing from one which may have been specifically enforceable to a monetary claim which is both allowable and dischargeable in this Chapter 11 proceeding. I agree.

Section 101(4) of the Bankruptcy Code (11 U.S.C. § 101(4)) defines a claim as follows:

'claim' means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(4)(A) & (B). This definition is the result of a compromise between the two branches of Congress. The House wanted to include as a claim the right to an equitable remedy for breach of performance even if the breach did not give rise to a right to payment. Section 101(4), H.R. 8200, 95th Cong., 1st Sess. (1977). The

Senate's later version excluded equitable remedies from the definition altogether. Section 101(4), S. 2266, 95th Cong., 2d Sess. (1978). The compromise embodied in § 101(4)(B) includes an equitable remedy as a claim only if the underlying breach "gives rise to a right of payment ..." The only legislative history explaining this final version consists of these statements made on the floors of both branches:

> Section 101(4)(B) represents a modification of the House-passed bill to include [in] the definition of 'claim' a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. This is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, in some States, a judgment for specific performance may be satisfied by an alternative right to payment, in the event performance is refused; in that event, the creditor entitled to specific performance would have a 'claim' for purposes of proceeding under title 11.

> On the other hand, rights to an equitable remedy for a breach of performance with respect to which such breach does not give rise to a right to payment are not 'claims' and would therefore not be susceptible to discharge in bankruptcy. 124 Cong.Rec. H11,090 (daily ed. Sept. 28, 1978); 124 Cong.Rec. S17,406 (daily ed. Oct. 6, 1978).

■ The Debtor's obligation to sign an agreement for judgment, and to certify to the Bank the existence of the judgment, is specifically enforceable outside of bankruptcy. Contracts are specifically enforceable in Massachusetts if the remedy "at law," damages, is inadequate. *Friend Bros., Inc. v. Seaboard Surety Co.*, 316 Mass. 639, 56 N.E.2d 6 (1944); *Butterick Publishing Co. v. Fisher*, 203 Mass. 122, 89 N.E. 189 (1909). BSC's legal remedy is to obtain judgment for $150,000, to which the Debtor has agreed. This judgment would be in complete or partial satisfaction of BSC's claim, depending upon the outcome of the litigation already in process in state court. But the judgment would be issued against a defendant in financial distress. It falls far short of producing certain payment; that is only available through specific performance of the Debtor's obligation to provide the documentation necessary to draw upon the letter of credit. Clearly this makes a money judgment inadequate in comparison to specific performance.

BSC therefore has the equitable remedy of specific performance. An equitable remedy is a claim under § 101(4)(B) only if the underlying breach "gives rise to a right to payment ..." The legislative history tells us that this language is intended to include damage claims "for which there may be an alternative equitable remedy ..." A seller's obligation under a contract for the sale of real estate is consequently treated as a claim in bankruptcy where the buyer has the right to either damages or specific performance, so that the seller's obligation is allowable and dischargeable. *In re A.J. Lane & Co., Inc.*, 107 B.R. 435, 439 (Bankr. D.Mass.1989); *In re Aslan*, 65 B.R. 826, 830–31 (Bankr.C.D.Cal.1986). Also dischargeable as a claim are the rights of a state under a mandatory injunction requiring the removal of hazardous waste where the state is seeking damages. *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). *See, also,* R. Jordan and W. Warren, *Bankruptcy* 122 (2d ed. 1989).

The Debtor's breach for which BSC has an equitable remedy is a breach which gives rise to a right to payment within the meaning of § 101(4)(B). The breach gives rise to BSC's claim against the Debtor for $150,000. It is true that BSC already had a claim in the sum of $186,051.21 for payment of its services, plus attorney's fees. But the new $150,000 claim is liquidated and subject to no defenses relating to the underlying services, whereas the larger claim for services is subject to any such defenses and is unliquidated because it was dependent upon the reasonable value of BSC's services, which were billed according to tasks performed and hours devoted rather than under a contract for a fixed sum.

The $150,000 claim under the letter of credit agreement is largely in substitution for the pre-existing services claim.

Including BSC's $150,000 claim within the sweep of § 101(4)(B) is consistent with the policies which Congress intended to promote. We know that in enacting the Bankruptcy Reform Act of 1978 Congress had in mind two central policies of bankruptcy law—equality of treatment of creditors and the economic efficiency achieved through reorganization of a business by a confirmed Chapter 11 plan discharging its former debts. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 177–78, 220 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6137–39, 6179. We also know from the legislative history of § 101(4)(B) that in enacting that section Congress intended to treat as an allowable and dischargeable claim a real estate buyer's remedy for specific performance where the buyer has an alternative right to damages. Congress was obviously intent that the remedy of specific performance not give the buyer more favorable treatment than he would obtain through his claim for damages. This is reflective of the general philosophy that a creditor with an equitable remedy reducible to money should not reign supreme through the exercise of his equitable remedy if that would result in prejudice to the great body of creditors holding only monetary claims.

There would be prejudice to other creditors if BSC were granted specific performance. The Bank would then have to pay under the letter of credit, thereby changing its $150,000 contingent claim against the Debtor to an absolute claim. Most important, this claim is secured by a real estate mortgage, so that it would have a priority over other creditors which is not enjoyed by BSC's $150,000 claim.

### III. THE LETTER OF CREDIT AGREEMENT AS AN EXECUTORY CONTRACT SUBJECT TO REJECTION UNDER SECTION 365

Principles governing rejection of an executory contract under § 365 have no bearing. The letter of credit agreement, first of all, is not an executory contract. It was fully performed by BSC when BSC released its bank account attachment. An attempted rejection of the agreement by the Debtor under § 365 makes no more sense than would an attempt by the Debtor to reject contracts such as loans which have been fully performed by the other party. See H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 347, U.S.Code Cong. & Admin.News 1978, p. 6303 ("Though there is no precision definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides."); Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 451 (1973). Rejection under § 365, moreover, must result in a claim. 11 U.S.C. §§ 365(g), 502(g).

Furthermore, the bankruptcy estate's failure to perform even a fully executory (and unassumed) contract should be treated no differently from the estate's failure to undertake any of the debtor's other obligations. Rejection under § 365 is not the source of a debtor's power to breach his contracts. It is simply the formal decision by the bankruptcy estate, a separate entity, not to assume a contract, in order to avoid directly obligating the estate thereunder. Obligations under an unassumed contract remain those of the debtor, subject to rules of discharge, not obligations of the estate like first priority claims. Unassumed obligations falling within § 101(4) are merely claims, entitled to share in estate distributions with other claims of the same class. See, Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection",* 59 U.Colo.L. Rev. 845 (1988).

A separate judgment has issued in accordance with this opinion.

### JUDGMENT

Upon the cross-motions for summary judgment filed by the Plaintiff A.J. Lane & Co., Inc. (the "Debtor") and the Defendant The BSC Group ("BSC"), the court having issued a separate opinion containing its conclusions of law, it is

ORDERED and ADJUDGED that

1. On October 18, 1989, the Debtor was not obligated under its agreement of October 19, 1988 with BSC to furnish to BSC the documents necessary for BSC to obtain payment of $150,000 from Home Federal Savings Bank (the "Bank") under the Bank's letter of credit of October 18, 1988.

2. The Debtor is therefore not now required to deliver to BSC the documents necessary for BSC to obtain payment of $150,000 from the Bank under the Bank's letter of credit now outstanding.

3. BSC holds an allowed (and unsecured) claim against the Debtor's bankruptcy estate in the sum of $150,000, and a claim against the Debtor's estate, not yet allowed or disallowed, for the excess over $150,-000 claimed in BSC's action against the Debtor now pending in Suffolk Superior Court, Civil Action No. 88–5379.