**In re Juan M. COFIELD, Debtor.**

**Juan M. COFIELD, Plaintiff,**

v.

**GUARANTY FIRST TRUST COMPANY, Defendant.**

**No. 91–15896–JNG.**

**Adv. No. 91–1477.**

United States Bankruptcy Court, D. Massachusetts.

March 31, 1992.

Judgment Entered April 1, 1992.

**342**

Harris G. Gorab, Boston, Mass., for plaintiff.

Jeffrey M. Friedman, Curhan, Kunian, Gushko, Burwick & Savrann, P.C., Boston, Mass., for defendant.

## MEMORANDUM

JAMES A. GOODMAN, Judge.

### I. Introduction

The issue before the Court is whether a third mortgage held by Guaranty First Trust Company ("GFTC") is a valid mortgage. GFTC says the mortgage is valid because it was granted to secure a preexisting debt and to replace collateral which had declined in value or become worthless. The Debtor argues that the mortgage is void because at the time it was granted no debt existed between the Debtor and GFTC. Moreover, the Debtor asserts the obligation the mortgage was intended to secure was not properly described.

### II. Facts

The material facts are not in dispute. Indeed, the parties have supplied the Court with a "Stipulation of Facts and Agreed Exhibits." The pertinent facts follow.

On December 30, 1986, Juan Cofield, ("Cofield"), as Trustee of the Lake Todd Nominee Trust ("LTNT"), purchased 285 acres of land in Newbury, New Hampshire for $1,350,000 and, as part of the transaction, granted a first mortgage to GFTC in the amount of $950,000. Cofield, as Trustee of LTNT, also gave a promissory note to Luther and Mildred Sweet, the sellers of the New Hampshire property, in the amount of $300,000, payable on December 31, 1988. Cofield personally guaranteed the promissory note. With interest, the note was payable in the amount of $349,920 at maturity. On the same day, GFTC issued an irrevocable letter of credit to Luther and Mildred Sweet, for the account of Cofield and LTNT, in the amount of $349,-920.

In conjunction with the issuance of the letter of credit, on December 30, 1986, Cofield, individually and as Trustee of LTNT, also executed a document captioned "Agreement for Letter of Credit," pursuant to which he agreed to reimburse and pay to GFTC "the amount of any draft which may be drawn under and in accordance with the terms of the Credit or purport to be so drawn." To secure this undertaking, in a separate pledge agreement dated December 30, 1986, Cofield pledged all the issued and outstanding capital stock of Malmart Mortgage Company, Inc. that he owned or held as of December 30, 1986. Moreover, he executed a personal guaranty on December 30, 1986 in favor of GFTC with respect to "all amounts now owing or which may hereafter be owing to said Bank from the Borrower on account of such loans, advances or credits, or otherwise, or the extensions or renewals thereof, and in whatever form ... at anytime due and owing." Cofield agreed that this guaranty would be continuous and absolute until revoked in writing.

One day prior to the execution of the agreements outlined above, Cofield and his wife Sherdena Cofield granted a second mortgage, in the principal amount of $250,-000, on the Debtor's personal residence at 284 Dean Road, Brookline, Massachusetts to GFTC as additional collateral for the first mortgage of LTNT. At the time, the

Dean Road property was subject to a first mortgage in the principal amount of $250,-000. However, the only mortgage in the amount of $250,000 in the collection of agreed exhibits appears to be the first mortgage dated December 21, 1981 between the Cofields as mortgagors and Malmart Mortgage Company, Inc. as mortgagee. In its memorandum, GFTC states:

> Guaranty will foreclose on its third mortgage on the Dean Road Property if the Court grants its Motion for Relief from the Automatic Stay. Any issues involving Guaranty's second mortgage on Dean Road are moot because Guaranty will discharge its second mortgage, although it believes debt still exists on a deficiency on the underlying obligation.

In 1987, Malmart Mortgage Company, Inc. filed for bankruptcy. Fearing that its collateral, namely Cofield's stock in Malmart, was worthless or nearly so, in late 1987 or early 1988, GFTC requested that the second mortgagee of LTNT subordinate its mortgage to a new third mortgage on the New Hampshire property for $349,920. This request was denied by the second mortgagee.

However, on January 19, 1988, over eleven months before the Sweet note became due and payable, Cofield and his wife executed a document purporting to be a third mortgage on the Dean Road property in the amount of $349,920. The mortgage recites the following:

> Juan M. Cofield and Sherdena D. Cofield for consideration paid, hereby grant unto ... [GFTC] ... with mortgage covenants, to secure payment of ... $349,920 ...: with interest on said sum until paid ... all payable as provided in a promissory note December 30, 1986 given by the Mortgagor [sic] to Luther Sweet and Mildred Sweet and a Letter of Credit dated December 30, 1986 Number 40357 issued by the Mortgagor to Luther Sweet or Mildred Sweet for the benefit of the Mortgagee [sic] and also to secure the performance of all agreements herein contained.

Additionally, Cofield executed a commercial promissory note to GFTC in the amount of $349,920, which note is dated January 19, 1988, purportedly secured by a second mortgage on the Dean Road Property. The Debtor alleges this note was signed well after the mortgage was executed.

LTNT defaulted on its payments on the first mortgage held by GFTC on the New Hampshire property. Subsequently, GFTC foreclosed on its mortgage, and was the purchaser at the foreclosure sale for $1.15 million.

On January 3, 1989, Luther and Mildred Sweet presented a sight draft to GFTC calling for payment of the letter of credit. GFTC honored the draft, and, on the same day, the Sweets assigned their note from Cofield to GFTC. Approximately two weeks later, GFTC notified Cofield of the assignment. Cofield, as Trustee of LTNT, acknowledged that $349,920 was due and payable. GFTC then attempted to foreclose on its third mortgage on the Dean Road property by filing, on November 1, 1989, a complaint in the Land Court. The protracted state court litigation that followed is not germane to the resolution of the instant dispute. GFTC, through its pending motion for relief from stay, now seeks permission from this Court to continue its foreclosure proceedings in the state court. Permission is predicated upon the validity of the third mortgage, an issue which is also the subject of the adversary proceeding commenced by Cofield against GFTC.

### III. Discussion

■ With respect to the Sweet note, the Debtor correctly observes that GFTC was not the payee, owner, holder, holder in due course, endorsee, or possessor of the Sweet note at the time the Debtor executed the third mortgage. The Debtor also correctly argues that there was no debt of any description under the Sweet note between Cofield and GFTC. With respect to the letter of credit, the Debtor argues "the mortgagors of the purported mortgage, accrue no debt or other obligation to perform which is defeasible by them, by this instrument whatsoever."

Although technically these statements may be correct, clearly, Article 5 of the Uniform Commercial Code, M.G.L. Ch. 106, §§ 5–101 to 5–117 (West 1990 & Supp. 1991), contemplates a relationship between the account party (Cofield) and the issuing bank (GFTC). Specifically, M.G.L. Ch. 106, § 5–106(1)(a) provides: ... "a credit is established ... as regards the customer as soon as a letter of credit is sent to him or the letter of credit or an authorized written advice of its issuance is sent to the beneficiary...." *Id.* Additionally, section 114(3) of Article 5 provides: "Unless otherwise agreed an issuer which has duly honored a draft or demand for payment is entitled to immediate reimbursement of any payment made under the credit and to be put in effectively available funds not later than the day before maturity of any acceptance made under the credit." *Id.* at § 114(3). As alluded to in section 114(3),

> [a]s between the issuer of a letter of credit and its customer, their respective rights, duties and liabilities are governed by the agreement between the two; in a typical modern letter of credit transaction, contracts often exist between the customer and the issuer which are not contained in the letter of credit, but are embodied in ancillary agreements.

50 Am.Jur.2d *Letters of Credit* § 19 (1970) (citations omitted).

Although no consideration is required for a letter of credit, in the circumstances of this case, the consideration for the issuance of the letter of credit to the Sweets is set forth in the Agreement for Letter of Credit signed by Cofield on December 30, 1986 in which Cofield promised to reimburse GFTC if any draft was drawn under the letter of credit. Thus, it is clear to this Court that, contrary to the Debtor's assertion that there was no pre-existing debt to be secured by the third mortgage at issue, GFTC had at least a contingent claim for reimbursement against Cofield until such time as it paid the Sweets under the letter of credit and its claim became fixed and no longer contingent. *See In re A.J. Lane & Co.*, 115 B.R. 738 (Bankr.D.Mass.1990); *In re Revere Copper & Brass, Inc.*, 60 B.R. 887 (Bankr.S.D.N.Y.1985).

The Debtor cites a plethora of cases for the proposition that in the absence of any debt a mortgage is invalid. These cases are not relevant where, as here, there was an existing contingent obligation on the part of Cofield to reimburse GFTC at the time he and his wife executed the 1988 mortgage. Accordingly, consideration existed for the third mortgage. *See* 55 Am. Jur.2d *Mortgages* § 136 (1971). There, it is stated "[a] mortgage need not be founded on a present debt, but may be given to secure the performance of other obligations. The mortgage may be made to secure future advances or to indemnify against a contingency which may in fact never occur." *Id* (citations omitted).

■ Thus, the only remaining deficiency with respect to the 1988 transaction is the reference in the mortgage to the letter of credit instead of the Agreement for Letter of Credit. In view of M.G.L. Ch. 106, § 5–114(3), the Court concludes that this omission is insufficient to invalidate the third mortgage. Clearly, the intentions of the parties are manifest. The guaranty and pledge agreements and the structure of the transaction pursuant to which LTNT acquired the New Hampshire property and GFTC issued the letter of credit evidence both the intention of GFTC to obtain valuable collateral and guaranties to secure its loans and letter of credit and the intention of Cofield to provide the bank with sufficient security to effectuate the acquisition. Indeed, Cofield, in the Agreement for Letter of Credit, recognized "the Bank's ownership in and unqualified right to possession and disposal of the Promissory Note and Certificate referred to in the Credit, upon honor of the Credit by the Bank." Thus, to the extent the obligation the mortgage was intended to secure was not properly described when the mortgage was executed, the description was accurate at the time GFTC began foreclosure proceedings. The Court notes, in this regard, the observations made by Chief Justice Marshall in *Shirras v. Caig*, 7 Cranch 34, 3 L.Ed. 260 (1812),

> It is not to be denied that a deed which misrepresents a transaction it recites,

and the consideration on which it is executed, is liable to suspicion. It must sustain a rigorous examination. It is, certainly, always advisable fairly and plainly to state the truth. But if, upon investigation, the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed of his real equitable rights, unless it be in favor of a person who has been in fact injured and deceived by the misrepresentation.

*Id.* at 50–51, 3 L.Ed. 260. The Court's review of the Statement of Facts and the relevant exhibits compels the conclusion that Cofield was not deceived or injured by the third mortgagee. Accordingly, the Court hereby enters judgment in favor of GFTC and against Cofield with respect to the first six counts of Cofield's complaint, as all counts are predicated in whole or in part on a finding that there was no obligation, contingent or otherwise, in existence between Cofield and GFTC at the time Cofield executed the third mortgage. As to count seven contained in the amended complaint, GFTC's representation that it will discharge its second mortgage moots that count. The Court's decision vitiates the need to enter judgment in favor of GFTC and against Cofield with respect to the first three counts of GFTC's four count counterclaim, which counts essentially seek a determination that Cofield is liable, one way or another to GFTC for $349,920, exclusive of interest, costs and attorney's fees.[1] The Court will reserve judgment on count four of the counterclaim through which GFTC seeks dismissal of Cofield's bankruptcy case, until such time as it determines what if any equity the debtor has in the Dean Road property and whether that property is necessary to an effective reorganization.

The foregoing shall constitute findings of fact and rulings of law pursuant to Federal Rule of Bankruptcy Procedure 7052. An appropriate order shall issue.

---

1. Through the first three counts of its counterclaim GFTC seeks determinations that it is a holder in due course of the Sweet note, that

## ORDER

In accordance with the Memorandum dated March 31, 1992, the Court hereby enters judgment in favor of Guaranty First Trust Company and against the Debtor, Juan M. Cofield, with respect to the first six counts of Cofield's complaint. Count 7 of the complaint is moot and therefore dismissed. The Court hereby schedules a hearing for May 1, 1992 at 10:15 A.M. in Courtroom 1 to consider count four of Guaranty First Trust's counterclaim and the remaining issues with respect to its motion for relief from stay. The Court takes no action with respect to counts one through three of the Bank's counterclaim.

Cofield is liable to it under his personal guaranty, and that LTNT is not a valid Massachusetts trust.