**In re DAIRY MART CONVENIENCE STORES, INC., et al., Debtors.**

**New England Dairies, Inc., Appellant,**

v.

**Dairy Mart Convenience Stores, Inc. and Dairy Mart, Inc., Appellees.**

**No. M–47 VM.**

United States District Court, S.D. New York.

Jan. 25, 2002.

### DECISION AND ORDER

MARRERO, District Judge.

On January 3, 2002, the United States Bankruptcy Court for the Southern District of New York issued a decision (hereinafter the "Decision" or the "Bankruptcy Decision")[1] from the bench in an adversary proceeding in connection with the Chapter 11 filing in *In re Dairy Mart Convenience Stores, Inc.*, Case No. 01–42400(AJG). The Bankruptcy Decision denied a request by appellant, New England Dairies, Inc. (hereinafter "NED"), the movant in that adversary proceeding, for an order directing appellees Dairy Mart Convenience Stores, Inc. and Dairy Mart Inc. (hereinafter "Dairy Mart" or the "Debtor") to renew a certain court-ordered security in the form of a letter of credit. NED has appealed the denial of its requested relief. Pursuant to Rule 8011(d) of the Federal Rules of Bankruptcy Procedure, NED moved for an emergency review of the Decision in this Court on an expedited basis. Because NED's emergency motion was filed without a complete record of the relevant proceedings below, the Court offered the parties an opportunity to supplement their briefs and subsequently heard oral argument on January 18, 2002. For the reasons set forth below, the Court accepts NED's emergency appeal given the unique set of circumstances present here and affirms the Bankruptcy Decision in all respects.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The origins of this dispute date to May 1997. NED then commenced an action in the United States District Court for the District of Connecticut (hereinafter the "Connecticut Action") against Dairy Mart alleging the repudiation of a supply contract between the parties. (*See* Affidavit of Elizabeth J. Austin in Support of Motion for Emergency Expedited Appeal, dated Jan. 4, 2002 (hereinafter "Austin Aff."), ¶ 9.) The Connecticut Action was filed a full four years in advance of Dairy Mart's Chapter 11 filing.

Confident of its legal position and concerned about the prospects of Dairy Mart's ability to pay a potential judgment, NED applied for a pre-judgment remedy in the Connecticut Action. (*See* Austin Aff., ¶ 10.) The court in the Connecticut Action (hereinafter the "Connecticut Court") granted NED's application, finding that there was probable cause to sustain the validity of NED's claims. (*See id.*)

The Connecticut Court awarded NED a pre-judgment remedy of $2,750,000 which Dairy Mart could satisfy by posting any one of the following instruments in the amount of the award: (1) a bond; (2) a letter of credit; or (3) other security to be approved by the court. (*See id.*, Ex. A (hereinafter the "1997 Order").) Dairy Mart sought to comply with the 1997 Order by obtaining a letter of credit in the amount of $2,750,000 which was set to expire after one year.

Although the record with respect to subsequent events is sparse, NED alleges that

---

**1.** *See* Transcript of January 3, 2002 Bankruptcy Court Decision, Response of Dairy Mart Convenience Stores, Inc. and Dairy Mart, Inc.

to New England Dairies, Inc.'s Motion for an Expedited Emergency Appeal, dated Jan. 8, 2002, Ex. 1.

it opposed Dairy Mart's letter of credit vehicle specifically because, *inter alia*, the one-year duration of the letter of credit provided inadequate security, and, in the event of the insolvency or bankruptcy of Dairy Mart, any attempt by NED to seek payment on the letter of credit could be complicated. NED further alleges that it raised these inadequacies to the Connecticut Court and sought additional protection.

To some extent, the Connecticut Court appears to have been persuaded by NED's fears of inadequate protection. Accordingly, the Connecticut Court issued a second order (hereinafter the "1998 Order") which approved of the proposed letter of credit with the additional requirement that Dairy Mart renew the form of security it chose sixty days prior to its expiration by posting any one of the three aforementioned instruments. (*See id.*, Ex. B.)[2] Apparently, the Connecticut Court intended, by the 1998 Order, to achieve a balance between NED's concerns and Dairy Mart's efforts to comply with the 1997 Order by posting a letter of credit.

NED represented on the record at oral argument on the instant matter that this compromise was specifically tailored to address its concerns about the security of the letter of credit in the event of Dairy Mart's bankruptcy. Although the Court has no reason to discredit NED's contention, it also has no factual record from which to conclude that the 1998 Order was specifically intended to do so. Furthermore, the Court cannot read beyond the four corners of the 1998 Order and contravene the Bankruptcy Code to fashion an equitable

remedy for NED. The compromise embodied in the 1998 Order is what it is.

From the record, it appears that the renewal provision of the 1998 Order served its purpose from 1999 until now, as Dairy Mart annually posted renewed letters of credit in the sixty-day period before the expiration of the prior letters of credit. The current letter of credit even appears to have survived, at least initially, Dairy Mart's voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330, filed on September 24, 2001. (*See id.*, ¶ 5). Furthermore, NED laid the groundwork for the entry of final judgment in the Connecticut Action by filing a motion for relief from the automatic stay to permit the Connecticut Court to issue its decision. (*See id.*, ¶ 16). The bankruptcy court granted NED's motion by an Order dated October 12, 2001 (hereinafter "Stay Relief Order"). Although the Connecticut Action was tried and heard before that court, and post-trial briefings were fully submitted by May 2001, the final judgment is still pending.

The viability of the pre-judgment remedy in the Connecticut Action has become increasingly uncertain because, by its own terms, the current letter of credit posted by Dairy Mart is set to expire on February 5, 2002, and there is no indication that a final judgment in the Connecticut Action will be entered by then. Faced with the expiration of its pre-judgment remedy, NED filed a motion in the bankruptcy court to compel Dairy Mart's compliance with the 1998 Order in the Connecticut Action, or in the alternative, for relief from

**2.** NED contends that Dairy Mart's posting of the letter of credit converted NED's status into that of a secured creditor. The bankruptcy court's analysis begins with the assumption that NED is a secured creditor, based on the security provided by the letter of credit. (Bankruptcy Decision, at 6–7.) Other courts likewise assumed that letters of credit may secure a creditor's interest in a bankruptcy proceeding. *See, e.g., Licensing by Paolo, Inc. v. Sinatra (In re Gucci),* 126 F.3d 380, 386 (2d Cir.1997); *Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.),* 162 B.R. 935 (Bankr.S.D.N.Y. 1994).

the automatic stay to permit NED to seek compliance from the Connecticut Court directly. The bankruptcy court denied NED's motion to compel in its entirety, and NED appealed to this Court.

### GROUNDS FOR EMERGENCY APPEAL UNDER RULE 8011(d)

 NED has brought the present appeal pursuant to Rule 8011(d), alleging that its appeal requires immediate attention on an emergency basis. To obtain expedited consideration under Rule 8011(d), an appellant must show by affidavit that "to avoid irreparable harm, relief is needed in less time than would normally be required" to appeal a bankruptcy court's decision. Fed. R. Bankr.P. 8011(d); *see, e.g., In re Finley*, 135 B.R. 456, 458 (S.D.N.Y.1992) (granting expedited review in order to avoid disruption to a fragile bankruptcy plan); *French Bourekas Inc. v. Turner*, 199 B.R. 807, 812 n. 13, 820 (E.D.N.Y.1996) (denial of expedited review despite imminent eviction because merits of appeal were frivolous); *In re Delco Development Mid–Island Limited Partnership*, No. CV–90–3914, 1990 WL 263495, *1 (E.D.N.Y. Nov.29, 1990) (summary denial of expedited review and merits of appeal).

Here, NED argues that the expiration of its letter of credit on February 5, 2002, along with the bankruptcy court's refusal to lift the stay to compel Dairy Mart to renew the letter of credit, will deprive it of

its twice-renewed status as a secured creditor. Dairy Mart opposes NED's request for emergency relief on the grounds that this state of affairs presents no emergency warranting expedited review. According to Dairy Mart, NED created its own time constraints by failing to seek from the Connecticut Court a less ephemeral prejudgment remedy between 1998 and 2001. As support for its position, Dairy Mart cites the bankruptcy court's observation that, "[b]etween [the 1998 Order] and the filing of this bankruptcy, [NED], if they thought that the [1998 Order] would not protect them, had the opportunity to go back to the [Connecticut Court] and seek relief. For whatever reason, that relief was not sought." (Bankruptcy Decision, at 9.) Furthermore, NED's claim for security is ultimately a contingent one in the sense that the final decision rests with the Connecticut Court which may or may not ultimately award judgment to NED in the Connecticut Action.

Nevertheless, under the unique circumstances present here, the Court finds that NED has stated a compelling case for emergency review.[3] The Court bases its decision on the unique situation presented by NED's court-ordered, pre-judgement remedy. The pre-judgment remedy is part of the pending Connecticut Action, which NED received based upon the Connecticut Court's determination that NED had established a likelihood of success on the merits. A decision in that case is imminent, but may not issue prior to Feb-

---

**3.** It is not clear that a change to a creditor's priority in a bankruptcy proceeding from a secured to an unsecured creditor, by itself, would constitute irreparable harm under Rule 8011(d). *Compare In re Finley*, 135 B.R. at 458; *and French Bourekas*, 199 B.R. at 807; *and In re Delco*, 1990 WL 263495 at *1; *with Borey v. National Union Fire Insurance Co. of Pittsburgh*, 934 F.2d 30, 34 (2d Cir.1991) ("Monetary loss alone will generally not amount to irreparable harm" and does not

warrant issuance of a preliminary injunction); *and Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77, 87 (2d Cir.1996) (evidence that a party intends to frustrate any monetary judgment to be issued by making it uncollectible may warrant issuance of a preliminary injunction). Nevertheless, NED's alleged transformation from a secured to an unsecured creditor, coupled with the specific procedural posture described above, convinces the Court that expedited review is warranted here.

ruary 5, 2002. In light of these circumstances, the Court is prepared to undertake and address the merits of NED's appeal on an expedited basis.

## DISCUSSION

### Standard of Review

■ A district court reviews the bankruptcy court's factual findings for clear error, and the conclusions of law *de novo*. Fed. R. Bankr.P. 8013; *In re Bonnanzio*, 91 F.3d 296, 300 (2d Cir.1996).

### The Automatic Stay and the Post–Petition Preference

■ In its ruling, the bankruptcy court concluded that (1) the Connecticut Court's requirement to renew the letter of credit would compel Dairy Mart to post replacement collateral which, in turn, on this occasion would result in a voidable post-petition preference; (2) the balance of equities did not tilt in favor of NED and that, therefore, § 105 of the Bankruptcy Code, 11 U.S.C. § 105, standing alone, did not support the relief requested by NED; and (3) NED was not entitled to relief from the automatic stay under § 362(d) of the Bankruptcy Code, 11 U.S.C. § 362(d). The Court finds no clear error in any of the bankruptcy court's factual findings and agrees with its legal determinations.

First, as a factual matter, the bankruptcy court found that in order to comply with 1998 Order, Dairy Mart would have to post additional, "replacement" collateral to secure a renewed letter of credit. (Bankruptcy Decision, at 7.) The Court finds no clear error in this factual determination. The bankruptcy court sits in the best position to assess the needs of the estate, the positions of the creditors and the financial obligations that the debtor would incur in post-petition transactions. *See, e.g., Business Communications, Inc. v. Freeman*,

129 B.R. 165, 166 (N.D.Ill.1991) ("[T]he bankruptcy judge is in the best position to monitor the progress of the litigation as he is overseeing the bankruptcy. From his vantage point, the bankruptcy judge can ensure the uniform, efficient administration of the bankruptcy estate.").

Because renewal of the letter of credit would require Dairy Mart to post new collateral, the bankruptcy court correctly concluded that such a transfer would create a voidable preference in favor of NED over other creditors. Although the parties have failed to cite case law directly on point, two decisions with substantially similar facts support the bankruptcy court's conclusion. In *A.J. Lane & Co., Inc. v. BSC Group (In re A.J. Lane & Co., Inc.)*, 115 B.R. 738, 739 (Bankr.D.Mass.1990), BSC Group had obtained a pre-judgment attachment of the debtor's bank account in connection with BSC Group's state court action. Thereafter, the parties agreed amongst themselves to release the attachment and replace it with a $150,000 letter of credit containing a one-year limit and a renewal provision similar to the one in the 1998 Order. *See id.* The renewal provision in *A.J. Lane*, permitted BSC Group to draw upon the letter of credit if one of two prospects materialized: (1) the debtor's failure to renew the letter of credit within the deadlines agreed upon by the parties; or (2) the entry of a final judgment in the state court action. In either case, payment under the letter of credit was contingent upon the submission of signed certificates by the debtor indicating that one of the two prospects had in fact occurred. *See id.*

As in the present case, A.J. Lane filed for bankruptcy protection. *See id.* at 740. Subsequently, A.J. Lane failed to renew the letter of credit under the terms of the agreement, and on the eve of the expiration of the letter of credit, the debtor

commenced an adversary proceeding seeking a determination that it was not required to execute the documents that would permit the creditor to draw upon the letter of credit.

A.J. Lane's primary contention was that its obligation to execute and submit the certifying documents had been transformed by operation of the bankruptcy from a specifically enforceable right into a monetary claim that was dischargeable under the Bankruptcy Code. The court agreed. *See id.* at 741. The court held that compelling the debtor to comply with those obligations would prejudice other creditors and that BSC Group "would have a priority over other creditors which is not enjoyed by BSC's $150,000 claim." *Id.* at 743. Similarly, the bankruptcy court in the present dispute found that the preference resulting from the renewal of the Dairy Mart letter of credit would be a voidable one.

NED takes issue with the applicability of *A.J. Lane* for two reasons. First, payment under the letter of credit in *A.J. Lane* was premised on the submission of certifying documents that both parties were required to execute. Second, and more importantly, NED claims that *A.J. Lane* is inapposite because the letter of credit arrangement was entered into by mutual agreement of the parties, whereas the letter of credit instrument here was specifically ordered by the Connecticut Court. This Court agrees with NED to the extent that the court-ordered letter of credit here may tilt slightly the balance of equities in its favor. Nevertheless, for purposes of the present appeal, the more focused question is whether that difference amounts to a distinction of legal significance rendering the *A.J. Lane* case inapplicable to this controversy. The Court finds that although the letter of credit here was entered into pursuant to court order,

that fact alone does not diminish the applicability of the principles set forth in *A.J. Lane.*

A bankruptcy court in this Circuit reached a similar decision on a slightly different set of facts involving a court-ordered letter of credit arrangement. In *Gates Community Chapel of Rochester, Inc. v. Dennies (In re Gates Community Chapel of Rochester, Inc.),* 123 B.R. 700 (Bankr.W.D.N.Y.1991), the creditor had obtained a final judgment in the amount of $46,000 and attached the debtor's bank account in the amount of $60,000. Subsequently, the debtor moved to terminate the attachment, which the court granted on the condition that the debtor file an undertaking in favor of the creditor. In lieu of the undertaking, the debtor obtained a letter of credit in favor of the creditor by posting $60,000 of cash in June 1990. The debtor filed for bankruptcy on August 17, 1990. Despite the entry of final judgment in the pre-petition action and the court-ordered security arrangement, the court found that the transfer of the $60,000 was voidable under 11 U.S.C. § 547.

Taken together, then, *A.J. Lane* and *Gates Community Chapel* support the proposition that the post-filing renewal of a letter of credit requiring the posting of replacement or new collateral is a voidable preference, irrespective of whether the renewal was court-ordered or not. The court's decision in *A.J. Lane* was not premised on the factual circumstance that the letter of credit vehicle had been reached by the parties' agreement, rather, the decision was based on the fundamental principle that the post-petition obligations created by the letter of credit was voidable pursuant to the Bankruptcy Code. For these reasons, the Court affirms the bankruptcy court's ruling that Dairy's Mart's renewal of the letter of credit would consti-

tute a post-petition preference that would be precluded by 11 U.S.C. § 362.

### Equitable Relief

NED also argues that the bankruptcy court erred in failing to use its equitable powers under 11 U.S.C. § 105(a) to preserve NED's status by lifting the stay to permit NED to pursue the renewal of the letter of credit before the Connecticut Court. In its Decision, the bankruptcy court held that "[t]here is no provision here that needs to be aided by Section 105. Section 105 standing alone can't form the basis of the relief as sought by [NED]." (Bankruptcy Decision, at 8).

 The bankruptcy court accurately summarized the law. Under § 105(a), a court has the limited power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). By its terms, § 105(a) "merely provides the court with equitable powers to further the substantive provisions of the code, it does not empower the court to create a cause of action otherwise unavailable under the bankruptcy code." *Hassett v. BancOhio Nat'l Bank (In re CIS Corporation)*, 172 B.R. 748, 757 (S.D.N.Y.1994); *accord Official Committee of Unsecured Creditors v. PSS Steamship Co., Inc. (In re Prudential Lines)*, 928 F.2d 565 (2d Cir.) *cert. denied* 502 U.S. 821, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991). Likewise, the equitable powers granted to a judge under § 105(a) "cannot be used to ignore the specific and unambiguous provisions of the [Bankruptcy] Code." *United States Trustee v. Andover Togs, Inc. (In re Andover Togs), Inc.*, Nos. 96 Civ. 7601 & 97 Civ. 6710, 2001 WL 262605, *4 (S.D.N.Y. Mar.15, 2001) (citing *In re Johns–Manville Corp.*, 40 B.R. 219, 226 (S.D.N.Y.1984) and *In re Federated Department Stores, Inc.*, 44 F.3d 1310, 1318 (6th Cir.1995)).

Here, for the reasons discussed above, the Bankruptcy Code does not recognize or protect NED's equitable claim. If either the bankruptcy court or this Court were to grant NED the relief it requests, it would give § 105(a) a life of its own, unfettered by the provisions of the Bankruptcy Code it is meant to serve. Accordingly, the bankruptcy court did not err in denying NED's motion, and the Court affirms its decision.

### Relief from the Automatic Stay

 Finally, the bankruptcy court dismissed NED's alternative motion for relief from the automatic stay in order to enable NED to seek compliance with the 1998 Order in the Connecticut Court. The bankruptcy court ruled that because the renewal of the letter of credit would create an impermissible post-petition preference, NED could not avail itself of § 362(d) in order to do so. Because this Court has already affirmed the Decision with respect to the voidable preference, it also affirms the denial of NED's alternative motion.

### ORDER

For the foregoing reasons, it is hereby

**ORDERED** that NED's appeal from the bankruptcy court's January 3, 2002 ruling is denied; and it is further

**ORDERED** that the bankruptcy court's Decision is affirmed in all respects.

**SO ORDERED.**