JACOBS, Circuit Judge.
In an underlying contract action brought by New England Dairies (“NED”) against Dairy Mart Convenience Stores, Inc. and Dairy Mart, Inc. (collectively, “Dairy Mart”), the Connecticut federal court ordered as a prejudgment remedy that Dairy Mart post a letter of credit and renew or replace it as necessary throughout the course of the litigation. After two renewals, Dairy Mart filed a Chapter 11 bankruptcy petition in the United States District Court for the Southern District of New York, and declined any further renewal. NED appeals from an order entered in the Southern District (Marrero, /.), affirming an order of the Bankruptcy Court for the Southern District of New York (Gonzalez, J.) that denied NED’s motion [i] to compel Dairy Mart to comply with its renewal obligation as adequate protection under sections 361 and 362 of the Bankruptcy Code; [ii] to lift the automatic stay under section 362 of the Bankruptcy Code to allow enforcement of NED’s prejudgment remedy; or [iii] for equitable relief under section 105 of the Bankruptcy Code. We affirm.
BACKGROUND
NED, a producer and distributor of milk and other dairy products, entered into a requirements contract to supply certain dairy products to convenience stores operated by Dairy Mart. In May 1997, NED sued Dairy Mart in the United States District Court for the District of Connecticut, seeking damages for breach of the supply contract, and promptly moved for a prejudgment remedy under an applicable Connecticut statute, Conn. Gen.Stat. § 52-278a et seq. On July 24, 1997, the district court (Covello, J.) ordered Dairy Mart to secure one of the following instruments for NED’s benefit: [i] “a bond in the amount of $2,750,000;” [ii] “a letter of credit in the amount of $2,750,000;” or [iii] “other security in the amount of $2,750,000, to be approved by the court.” Dairy Mart elected to furnish a letter of credit for the requisite amount, with NED named as beneficiary.
Worried that the one-year letter of credit would expire before the litigation ran its course — and might in any event become unenforceable if Dairy Mart went into bankruptcy- — -NED sought an order directing Dairy Mart to procure a revised letter of credit that would allow a drawdown if Dairy Mart ever failed to renew it or if *89 Dairy Mart filed for bankruptcy. Instead, the district court (Droney, J.) ordered that Dairy Mart renew or replace the letter of credit sixty days before its expiration as necessary during the life of the litigation.
Pursuant to that order, Dairy Mart renewed the letter of credit twice: on December 30, 1999, Dairy Mart obtained a new letter of credit with an expiry date of February 5, 2001; on December 13, 2000, the bank amended the expiry date to February 5, 2002.
A bench trial was conducted in the fall of 2000. On May 21, 2001, after post-trial briefing and submissions, the district court heard final arguments and reserved decision. While the case was sub judice, Dairy Mart filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York on September 24, 2001. The letter of credit was then due to expire in approximately four months.
On September 28, 2001, NED moved in the bankruptcy court for relief from the automatic stay to enable Judge Droney to issue his decision and enter judgment in the Connecticut action. On October 12, 2001, the bankruptcy court (Gonzalez, J.) granted NED’s motion. On October 17, 2001, the bankruptcy court authorized Dairy Mart to pay certain pre-petition secured debts, an order that would have rendered NED’s letter of credit enforceable in accordance with its terms under the debtor-in-possession financing agreement. However, NED still had to await Judge Droney’s decision and judgment; and the letter of credit by its terms could not be drawn upon until sixty days after final judgment or, if Dairy Mart pursued an appeal, sixty days after affirmance.
Concerned that Judge Droney would not enter judgment in time and that Dairy Mart would not renew the letter of credit (as required) by early December, NED moved in the bankruptcy court seeking alternative relief [i] compelling Dairy Mart to comply with Judge Droney’s prejudgment remedy order by renewing its security; or [ii] granting relief from the automatic stay to allow Judge Droney to enforce his own order; or [iii] granting equitable relief under 11 U.S.C. § 105(a). On January 3, 2002, the bankruptcy court denied the motion.
In denying relief, the bankruptcy court assumed — without deciding — that NED is a secured creditor for purposes of obtaining adequate protection under 11 U.S.C. § 361. It held, however, that “[t]he obligation ... to provide replacement collateral is not collateral in and of itself but is a dischargeable obligation and would, in effect, result in a post-petition preference” for NED. The court ruled that section 105(a) is inapplicable because section 105(a) provides no relief on its own and because NED’s motion implicates no other provision of the Bankruptcy Code. In any event, even if section 105(a) were applicable, the court found that the equities favor Dairy Mary because NED “recognized the problems that they may encounter by insolvency” and “they had the opportunity to go back to the District Court and seek [additional] relief,” but “[f]or whatever reason, that relief was not sought.”
NED filed an emergency appeal to the United States District Court for the Southern District of New York. On January 25, 2002, the district court (Marrero, J.) granted expedited review and affirmed the bankruptcy court’s ruling in all respects. See In re Dairy Mart Convenience Stores, Inc., 272 B.R. 66 (S.D.N.Y.2002). On January 31, 2002, NED filed a timely notice of appeal to this Court.
On February 4, 2002, the District of Connecticut issued its decision in the breach of contract action. New England *90 Dairies, Inc. v. Dairy Mart Convenience Stores, Inc., 2002 WL 229900 (D.Conn. Feb. 4, 2002). The court ruled that Dairy Mart had breached the supply contract, and awarded NED $960,194 in lost profit damages. See id. at *8, *15. The letter of credit expired the next day (February 5, 2002), sixty days before NED would have been able to draw upon it.
DISCUSSION
On appeal, NED challenges the bankruptcy court’s order, and the district court’s affirmance, denying NED [i] adequate protection under 11 U.S.C. § 361; [ii] relief from the automatic stay imposed by 11 U.S.C. § 362(a); and [iii] equitable remedies pursuant to 11 U.S.C. § 105(a).
I. Adequate Protection
The filing of a Chapter 11 bankruptcy petition triggers an automatic stay of any judicial proceeding or other act against the property of the estate that was or could have been commenced before the filing of the petition. 11 U.S.C. § 362(a) (2003). When the automatic stay endangers “an interest of an entity in property” of the estate, that entity may receive “adequate protection” in the form of cash payments, a lien, or “such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity’s interest in such property.” Id. § 361.
NED sought adequate protection for its interest in the $2.75 million letter of credit by asking the bankruptcy court to compel Dairy Mart to renew it. The bankruptcy court assumed that NED was a secured creditor, but denied the request for adequate protection on the ground that “[t]he obligation to provide replacement collateral is, in effect, an obligation to secure a pre-petition claim which is stayed by Section 362.” Since Dairy Mart’s renewal of the letter of credit would therefore create a post-petition preference, the obligation to do so was dischargeable in bankruptcy. The district court affirmed, approving of the bankruptcy court’s conclusion that “such a transfer would create a voidable preference in favor of NED over other creditors.” In re Dairy Mart, 272 B.R. at 71.
We agree with the conclusion that NED is not entitled to adequate protection, but reach that conclusion on another ground. The bankruptcy court’s assumption to the contrary notwithstanding, we conclude that NED is ineligible to receive adequate protection because it is not a secured creditor as defined by the Bankruptcy Code.
The adequate protection provision of 11 U.S.C. § 361 protects only secured creditors. See Pileckas v. Marcucio, 156 B.R. 721, 725 (N.D.N.Y.1993) (“[Tjhere is no express statutory requirement that holders of unsecured claims be provided [the] ‘adequate protection’ of § 361.”); In re Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr.S.D.N.Y.1990) (“[T]he concepts of adequate protection of an interest in property and the existence of an equity interest in property do not apply to unsecured claims.”); 3 Collier on Bankruptcy ¶ 361.02 (15th ed. 2003) (“ ‘Adequate protection’ is mandated by certain provisions of the Code when requested by an entity with an interest in property in which the estate has an interest.”); 4 id. ¶ 506.03[4][a][iv] (“[Section 506(a) establishes the existence and extent of the creditor’s secured claim for purposes of the adequate protection determination.”); see also United Sav. Ass’n v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 371-72, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (defining the value of an “entity’s interest in property” that is entitled to adequate protection in light of the meaning of value of “creditor’s interest” in property under section 506(a)); In re Winthrop Old Farm *91 Nurseries, Inc., 50 F.3d 72, 74 (1st Cir.1995) (“[A] valuation for § 361 purposes necessarily looks to § 506(a) for a determination of the amount of a secured claim.”).
Section 506(a) of the Bankruptcy Code defines a “secured claim” as “[a]n allowed claim of a creditor secured by a lien on property in ivhich the estate has an interest.” 11 U.S.C. § 506(a) (emphasis added). Here, NED’s only interest is in the letter of credit issued to Dairy Mart by the bank; it has no direct interest in any of Dairy Mart’s property. It is the nature of a letter of credit (as well as its utility) that the obligation to the beneficiary (here, NED) runs from the bank. NED argues that it has a sufficient interest in Dairy Mart’s property based on the collateral Dairy Mart must have furnished to the bank to obtain the letter of credit; but such an arrangement does not satisfy the requirements of section 506. See In re Keene Corp., 162 B.R. 935, 942 (Bankr.S.D.N.Y.1994) (“The letter of credit is an independent third party obligation, and the proceeds are not the debtor’s property even if ... [it] is secured by the debtor’s property.”); In re Wedtech Corp., 187 B.R. 105, 107 (1995) (“[W]hen a debt is secured by collateral pledged by a third party, the security interest does not give rise to a secured claim against the debtor’s estate.”).
The District of Connecticut ordered Dairy Mart to provide NED with prejudgment security in the form of a bond, letter of credit, or “any other security in the amount of $2,750,000, to be approved by the court.” NED acquiesced in (or insufficiently protested) Dairy Mart’s satisfaction of this order by procuring a letter of credit, and did not insist that Dairy Mart provide security in the form of a direct property interest. The letter of credit creates a conditional claim on the assets of the bank; it does not create a security interest in the assets of Dairy Mart. While the issuing bank may have enjoyed a secured claim on Dairy Mart’s estate if NED had succeeded in collecting under the letter of credit, NED itself is an unsecured creditor vis-á-vis the Dairy Mart estate, and is therefore ineligible to receive adequate protection.
II. Automatic Stay
NED also contends that it is entitled to relief from the automatic stay imposed by section 362 of the Bankruptcy Code. See 11 U.S.C. § 362(a). However, this issue was mentioned only in passing in NED’s brief, without argument or authority. In any event, this claim is meritless.
The decision to lift an automatic stay is left to the discretion of the bankruptcy court, and this Court will only review that decision for abuse of discretion. See In re Sonnax Indus., 907 F.2d 1280, 1286 (2d Cir.1990). We conclude that the bankruptcy court’s denial of relief from the automatic stay was entirely appropriate.
Section 362 lists several circumstances in which the court “shall grant relief from the stay ... such as by terminating, annulling, modifying, or conditioning such stay.” 11 U.S.C. § 362(d). The only enumerated circumstance that could possibly apply here is section 362(d)(1), which allows the court to lift a stay “for cause, including the lack of adequate protection of an interest in property of such party in interest.” 11 U.S.C. § 362(d)(1) (emphasis added). For the reason stated above, however, NED has no interest in Dairy Mart’s property. It cannot show that it is entitled to adequate protection. As a result, NED is not entitled to relief from the automatic stay.
III. Equitable Relief
Section 105(a) of the Bankruptcy Code gives the court equitable power to *92 “issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.” 11 U.S.C. § 105(a). This Court has long recognized that “Section 105(a) limits the bankruptcy court’s equitable powers, which ‘must and can only be exercised within the confínes of the Bankruptcy Code.’ ” FDIC v. Colonial Realty Co., 966 F.2d 57, 59 (2d Cir.1992) (quoting Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988)). It does not “authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.” United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir.1986).
The statutory language supports this limit on the equitable powers of the bankruptcy court. The equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the provisions of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing. This language “suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective.” 2 Collier on Bankruptcy ¶ 105.01[1].
NED concedes that section 105(a) does not operate on a stand-alone basis, but argues that it applies here nonetheless because its motion implicated sections 361 and 362 of the Bankruptcy Code, and because the relief it sought was consistent with the policies of those sections. (Appellant’s Br. at 26.) It may be that NED’s motion “implicates” sections 361 and 362 of the Bankruptcy Code, but we have determined that NED is not entitled to substantive relief under those sections. Because no provision of the Bankruptcy Code may be successfully invoked in this case, section 105(a) affords NED no independent relief.
Even if section 105(a) were applicable, the equities in this case favor Dairy Mart. NED relied on Dairy Mart’s letter of credit and the District of Connecticut’s renewal order, despite its knowledge that Dairy Mart could file a bankruptcy petition that would impede the collection of unsecured debts. NED says “[i]t never imagined that if Dairy Mart went bankrupt, it could be relieved of its obligations to comply with a District Court order of this nature” (Appellant’s Br. at 29); but NED could have anticipated the circumstances that have transpired. Equity does not permit NED to move to the head of the creditors’ line after it failed to properly secure its own interest. We conclude that the bankruptcy court did not err in denying equitable relief.
CONCLUSION
For the foregoing reasons, we affirm the orders of the district court and bankruptcy court.